IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-01041-CMA-KLM

EARL WILLIAM CAMPBELL, JR.,

      Plaintiff,

v.

KEVIN MILYARD,
DR. FLOYD POHLMAN, M.D.,
DR. GAGEN SINGH, M.D.,
DR. J.G. FORTUNATO, D.O.,
DR. PAULA FRANTZ, M.D.,
STERLING REGIONAL MED. CENTER,
BEVERLY DOWIS, H.S.A.,
KATHERN RITTENHOUSE, P.A.C., and
SERGEANT JOHNSON, LU-3,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendant Floyd Pohlman, M.D.'s Motion to Dismiss** [Docket No. 32; Filed October 28, 2009] ("Motion No. 32"); **Defendants Milyard, Pohlman, Singh, Frantz, Fortunato, Dowis, Stock, Rittenhouse and Johnson's Motion to Dismiss** [Docket No. 37; Filed November 16, 2009] ("Motion No. 37"); **Defendant Sterling Regional Medical Center's Motion to Dismiss for Failure to State a Claim on Which Relief Can Be Granted** [Docket No. 50; Filed December 9, 2009] ("Motion No. 50"); **Defendant Sterling Regional Medical Center's Motion to Dismiss for Failure to File Certificate of Review Pursuant to Colo.Rev.Stat. 13-20-602(1)(a) and 602(4)** [Docket No. 51; Filed December 9, 2009] ("Motion No. 51"); and **Defendant Sterling Regional**

**Medical Center's Motion for Summary Judgment** [Docket No. 73; Filed March 22, 2010] ("Motion No. 73").

Plaintiff has made numerous responsive filings. Plaintiff responded to Motion No. 32 [Docket Nos. 47, 62 & 64]; Motion No. 37 [Docket Nos. 47 & 65]; and Motion Nos. 50 & 51 [Docket No. 63]. Defendants replied in support of Motion No. 32 [Docket No. 54], in support of Motion No. 37 [Docket No. 55], and in support of Motion Nos. 50 and 51 [Docket No. 66]. However, Plaintiff did not respond to Motion No. 73. All Motions are now ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1(C)(3), the Motions have been referred to this Court for a recommendation. Having reviewed the entire case file and being sufficiently advised, the Court **RECOMMENDS** that Motion No. 32 be **GRANTED**, that Motion No. 37 be **GRANTED in part and DENIED in part**, that Motion No. 50 be **GRANTED**, that Motion No. 51 be **DENIED as moot**, and that Motion No. 73 be **DENIED as moot**.

I.      **Factual and Procedural Background**[1]

Plaintiff, who is proceeding in this matter *pro se*, currently is incarcerated at Sterling Correctional Facility ("SCF"). Amended Complaint, Docket No. 16, Claim One, ¶ 1 ("Complaint"). Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendant violated his constitutional rights. Specifically, he makes three separate claims: (1) "Failure to provide proper medical treatment resulting in unnecessary pain and suffering [and] permanent injury;" (2) "Conditions and treatment in SCF's segregated unit constitutes

---

[1] For the purposes of resolving the parties' Motions to Dismiss, the Court takes as true all plausible allegations made in Plaintiff's Complaint. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[sic] cruel and unusual punishment;" and (3) "Plaintiff was denied access to the court." *See Complaint* [#16]. Plaintiff brings this action against Defendants Kevin Milyard, Dr. Floyd Pohlman, Dr. Paula Frantz, Dr. J.G. Fortunato, Beverly Dowis, Kathern Rittenhouse, Joann Stock, and Sergeant Johnson ("State Defendants") and Defendant Sterling Regional Medical Center ("SRMC"). The first two claims are brought under the Eighth Amendment; the third alleges a violation of Plaintiff's due process right of access to the courts pursuant to the Fourteenth Amendment.

The events giving rise the Plaintiff's Claim One began in 2002. *Id.* ¶ 3. In September of 2002, Plaintiff underwent surgery to reconstruct the anterior cruciate ligament ("ACL") of his left knee. *Id.* Defendant Pohlman performed the procedure. *Id.* After much pain and suffering by Plaintiff, Defendant Pohlman examined Plaintiff and directed him to continue exercising his knee. *Id.* ¶ 3-9. In the fall of 2003, after an MRI of the knee, Defendant Pohlman informed Plaintiff that a second surgery was necessary because the original graft had not taken. *Id.* ¶¶ 13-15. Defendant Pohlman performed a second procedure in October of 2003. *Id.* ¶ 25. Soon after the 2003 procedure, Plaintiff fell on an icy sidewalk within the SCF complex. *Id.* ¶¶ 30-31. At the time of the fall, he was walking to get his pain medication. *Id.* ¶ 29. He was walking without the aid of cane or crutches, per Defendant Pohlman's rehabilitation instructions. *Id.* ¶ 29. Plaintiff was seriously injured by the fall, tearing open his recent surgical wound and hitting his head, rendering him unconscious. *Id.* ¶ 31. Plaintiff received emergency medical attention, including emergency surgery to his left knee. *Id.* ¶¶ 31-48.

Following the third surgery in the fall of 2003, and after his return to SCF, Plaintiff's left knee became infected. *Id.* ¶¶ 60-66. His condition became progressively worse, and

he complained to those in charge of his care, including Defendant Singh, about his condition. *Id.* ¶¶ 58-59, 62-65. On December 5, 2003, Plaintiff received medical treatment for his knee. *Id.* ¶¶ 67-70. Defendant Singh ordered Plaintiff sent to Denver Reception and Diagnostic Center ("DRDC") for intravenous antibiotics, and Plaintiff was subsequently sent to "Denver Health." *Id.* ¶¶ 69-70. Plaintiff underwent a fourth knee surgery on December 7, 2003. *Id.* ¶ 80. He then received follow-up care at Denver Health and DRDC. *Id.* ¶¶ 81-84. He returned to SCF on December 23, 2003, and while his wound healed without further infection, Plaintiff remained in pain. *Id.* ¶¶ 87, 89. At some point following his return to SCF, he was denied any further pain medication by Defendants Singh and Rittenhouse. *Id.* ¶ 87. On or about August 27, 2004, Plaintiff was sent to Denver Health for additional "follow-up" treatment. *Id.* ¶ 90. Upon his return, a committee at SCF determined that Plaintiff would receive no further surgery or treatment for his knee. *Id.* ¶ 91.

Plaintiff continued to be in pain, and his condition was exacerbated by a fall from a top bunk, in which he injured his head and was taken to SRMC for emergency treatment. *Id.* ¶¶ 95-96. Plaintiff continued to complain about his pain and request treatment. *Id.* ¶¶ 97, 99-103. Plaintiff received at least some medical attention during this time. In addition to the August 2004 follow-up treatment, in late 2005, Plaintiff was examined by someone from McDonald Physical Therapy and Sports Medicine, who determined that Plaintiff's left knee required additional surgery. *Id.* ¶ 93. Plaintiff was issued a knee brace, and in January of 2006, an MRI was taken of Plaintiff's knee. *Id.* ¶¶ 93,104. The MRI showed that Plaintiff's ACL graft in his left knee still had not taken, meaning that Plaintiff's knee was in essentially the same condition as it had been prior to the September 2003 surgery. *Id.*

¶ 104.  In February of 2007, Plaintiff was told by Defendant Frantz that he would not receive any further treatment of his left knee beyond authorization to use a cane and daily Tylenol.[2]  *Id.*

The factual allegations Plaintiff makes in support of Claims Two and Three are far less detailed.  In Claim Two, Plaintiff alleges that a variety of circumstances give rise to a claim that his conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment.  *Complaint* [#16], Claim Two.  In Claim Three, Plaintiff alleges that he was denied access to the courts.  *Complaint* [#16], Claim Three.

Defendants bring their Motions to Dismiss, requesting that the Court dismiss all claims against them for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant SRMC also requests that the Court dismiss Plaintiff's claim because Plaintiff failed to file a certificate of review, as required by Colorado state law, and Defendant Pohlman joins in that Motion [Docket No. 76].  Finally, Defendant SRMC seeks entry of summary judgment in its favor [Docket No. 73].

## II.    Legal Standard for Motions to Dismiss

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."

---

[2] Plaintiff attaches to his initial Complaint copies of various grievances filed regarding the wrongs alleged in the instant action.  Defendants do not argue that Plaintiff has failed to exhaust his administrative remedies as to any claim, which is an affirmative defense that must be raised by Defendants.  The Court therefore will not consider any of Plaintiff's attachments in evaluating the various Motions to Dismiss presently before the Court.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*, 129 S. Ct. at 1949 (citation omitted).

6

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.   Defendant Pohlman's Motion to Dismiss (Motion No. 32)

Defendant Pohlman asserts that the claim against him must be dismissed because it was not brought within the time frame provided by the applicable statute of limitations.[3] Plaintiff brings a claim against Defendant Pohlman pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994). In Colorado, the limitation on a personal injury claim brought pursuant to section 1983 is two years. *See* COLO.REV.STAT. § 13-80-102(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying COLO.REV.STAT. § 13-80-102 to a section 1983 claim).

---

[3] Although Plaintiff's Response addresses the applicability of the statute of limitations defense as to all of the Defendants, no other Defendant has raised this affirmative defense.

However, federal law rather than state law determines when a cause of action accrues. *Indus. Constructors Corp. v. U. S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Federal law provides that "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969. That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted).

Once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date or to show that there is a basis to toll the accrual date. *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Although the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint. *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008); *Aldrich*, 627 F.2d at 1041 n.4.

Plaintiff signed and dated his originally filed Complaint on April 1, 2009.[4] The Complaint was not filed in this Court until May 5, 2009. It is not clear why more than a month passed between the date Plaintiff allegedly signed the Complaint and the date on which it was filed. For the purposes of review of Defendant Pohlman's Motion, the Court will assume that Plaintiff initiated his case in this Court on April 1, 2009, the date on which he signed the Complaint.[5] Therefore, pursuant to the two-year statute of limitations set

_____

[4] The only date on the Complaint is found in the Declaration.

[5] The mailbox rule applies to an inmate's filing of a civil rights complaint. *See Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005). Pursuant to the mailbox rule, "an inmate who places a federal civil rights complaint in the prison's internal mail system will be treated as having 'filed' that complaint on the date it is given to prison authorities for mailing to the court." *Id.* at 1165. However, the inmate must establish actual

forth in COLO. REV. STAT. § 13-80-102, any acts occurring prior to April 1, 2007 are time-barred and any claim based thereon must be dismissed by the Court unless Plaintiff establishes that the limitations period is subject to tolling.  Accordingly, the Court must examine the dates alleged in Plaintiff's claims against Defendant Pohlman to determine whether it is apparent on the face of the Complaint that any of the conduct falls outside the applicable statute of limitations period.

In his Complaint, Plaintiff alleges that Defendant Pohlman performed three surgeries on him.  He performed the first surgery, an ACL reconstruction procedure, in September 2002; the second, also for the purpose of reconstructing Plaintiff's ACL, in October 2003; and the third, an emergency procedure following Plaintiff's fall, in late October 2003. Plaintiff alleges no further action by Defendant Pohlman after the October 2003 emergency surgery.  The last mention of Defendant Pohlman is in paragraph 88 of the Complaint, in which Plaintiff alleges that he submitted "numerous requests for 'sick call' and asked to be scheduled to see Dr. Pohlman.  Dr. Pohlman refused to examine Plaintiff and SCF Medical Services refused any further care or treatment."  *Complaint* [#16] ¶ 88.  Plaintiff makes these allegations in the context of his description of events taking place between December 10, 2003 and August 27, 2004.  *See id.* ¶¶ 84-90.  On August 27, 2004, an x-ray was taken of Plaintiff's knee which indicated the presence of "metallic foreign bodies" which the x-ray technician opined were from "prior gun shot wound to the left knee," although Plaintiff states he has never been shot.  Plaintiff alleges that these foreign bodies were "remnant's

---

use of the prison's internal mail system in order to be provided the benefits of the mailbox rule.  *Id.* The Court will assume without deciding that the mailbox rule applies, and therefore that Plaintiff's Complaint was placed in the prison mail system on the date when he signed and dated it.

of Dr. Pohlman's surgery," and were not supposed to be there.  *Id.* ¶ 90.  Thus, Plaintiff learned of the most recent allegedly wrongful act by Defendant Pohlman on or about August 27, 2004.  Plaintiff signed his Complaint on April 1, 2009, approximately four years and seven months later.

Thus, it is evident on the face of the Complaint that the claims against Defendant Pohlman are brought outside the applicable statute of limitations.  However, Plaintiff argues that Defendant Pohlman's argument fails because he "fails to consider . . . that Plaintiff is a state prisoner" and was required to fully exhaust his administrative remedies prior to filing his claims against Defendant Pohlman.  *Id.*  Plaintiff further explains that beginning in 2002, shortly after his first ACL surgery, continuing until February of 2007, Plaintiff "was convinced and believed that the Defendants were going to treat and correct Plaintiff's knee injury," *id.* ¶ 3, and he "relied on the continuing promises and assurances made by Defendants' [sic] that Plaintiff's knee injury would be treated."  *Id.* ¶ 4.  Plaintiff contends that "any alleged untimeliness was caused by the Defendants and [was] a direct result of all their assurances and promises to provide Plaintiff with proper care and treatment."  *Id.* ¶ 9.  Plaintiff's statements amount to an argument that the statute of limitations should be tolled on the basis of equitable considerations.

The issue of tolling is governed by Colorado state law.  See *Fratus*, 49 F.3d at 675.  Colorado's equitable tolling provisions are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts."  *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996).  The burden lies with Plaintiff to prove that the statute of limitations has been equitably

tolled. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

In support of his argument that the applicable statute of limitations should not be tolled for the time period during which Plaintiff pursued his administrative remedies within CDOC, Defendant Pohlman relies on two unpublished cases, *Rosales v. Ortiz*, 325 Fed. App'x 695 (10th Cir. 2009), and *Sims v. New*, No. 08-cv-00794-CMA-MEH, 2009 WL 3234225 (D. Colo. Sept. 30, 2009). The Court is not persuaded that these cases control the outcome in the instant case.

In *Rosales*, the Tenth Circuit considered whether "Colorado tolls statutes of limitations during the exhaustion of administrative remedies required by federal law." *Rosales*, 325 Fed. App'x at 698. The court noted that "[n]o case or statute directly supports that proposition, and [we] are disinclined to carve out such an exception here." *Id.* However, in *Rosales*, unlike here, the applicable statute of limitations had not yet expired at the time plaintiff finished exhausting his administrative remedies. The *Rosales* court emphasized this fact. It chose not to consider the option of carving out another "exception" to the statute of limitations because "the two-year limitations period had not run on [plaintiff's] claims when they were administratively exhausted" and therefore the court would not "search for a way to make something which was already available even more so." *Id.* Thus, in *Rosales*, the plaintiff's failure to file his federal lawsuit before the expiration of the statute of limitations was due to plaintiff's general lack of diligence, and not due to time spent exhausting his administrative remedies.

The *Sims* court addressed more closely the issue presently before the Court. In *Sims*, plaintiff failed to file his claim prior to the expiration of the statute of limitations. The Court concluded that although the statute of limitations had expired by the time the plaintiff

finished exhausting his administrative remedies, he "did not exhaust his administrative remedies until May 2006 – four years after he knew or should have known of the facts giving rise to his claims." *Sims*, 2009 WL 3234225 , at *5. The *Sims* court concluded that therefore the plaintiff "did not pursue his administrative remedies in a timely fashion and this lack of diligence will not support tolling of the statute of limitations under Colorado law." *Id.* (citing *Smith v. Executive Custom Homes, Inc.*, 209 P.3d 1175, 1180 (Colo. Ct. App. 2009)). In finding that the plaintiff had not pursued his administrative remedies with "diligence," the *Sims* court relied in part on the fact that the plaintiff did not "explain [his] failure to timely pursue [his] remedies in either the administrative forum or this Court." *Id.*

Similarly, here Plaintiff asserts that he exhausted his administrative remedies as to his knee issues on July 3, 2008, almost four years after he became aware of the most recent alleged wrongful act by Defendant Pohlman. *See Complaint* [#16] ¶ 105. However, unlike the plaintiff in *Sims*, Plaintiff attempts to "explain" his failure to timely pursue a remedy, by arguing that Defendants consistently told him that his knee issues would be addressed. Here, therefore, Plaintiff essentially contends that he pursued a remedy "diligently," and any delay was due to his reliance on Defendants' misrepresentations that he would receive treatment. Accordingly, the precise issue before this Court is whether the Court should find, as a matter of law, that Plaintiff is not entitled to equitable tolling of the statute of limitations.

The Court concludes that it should not so find at this stage of the litigation. In order to apply the statute of limitations affirmative defense to bar Plaintiff's claims at this point in the case, it must be clear on the face of the Complaint not only that the action is brought outside the statute of limitations, but also that "no further factual record [is] required to be

developed," *Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995), including facts related to whether Plaintiff is entitled to equitable tolling. *See Armbeck v. Quinones*, No. 00-1021, 2000 WL 1672594, a t *3 (10th Cir. Nov. 7, 2000) (holding that it was not obvious on face of complaint whether plaintiff entitled to equitable tolling under Colorado law and because development of facts was necessary, District Court's dismissal of § 1983 claims on motion to dismiss reversed and remanded)*; Garrett v. Arrowhead Imp. Ass'n*, 826 P.2d 850 (Colo. 1992) (reversing administrative decision and remanding for greater development of facts where plaintiff alleged lack of necessary information on claim due to defendant's actions); *see also Aldrich*, 627 F.2d at 1042 (noting that "[t]he question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law" and finding that plaintiff's allegations that defendants concealed relevant information from plaintiff "sufficient to invoke the doctrine of equitable tolling at the [Rule 12(b)(6)] stage [of] proceedings").

Here, the Court concludes that " fact[ual] issues exist as to whether defendants' alleged wrongful conduct prevented [Plaintiff] from being able to timely assert his claims." *Armbeck*, 2000 WL 1672594, at *3. These factual issues include who made alleged reassurances to Plaintiff regarding treatment of his knee, on whose behalf such reassurances were made, and the substance of such reassurances.

Accordingly, the Court respectfully **RECOMMENDS** that Defendant Pohlman's Motion to Dismiss be **DENIED**.[6]

---

[6] Although Defendant Pohlman addresses the general sufficiency of Plaintiff's allegations in his *Reply* [#54] at 7-9, Defendant Pohlman did not raise this argument in his Motion. Defendant Pohlman joined in the State Defendants' Motion which seeks dismissal due to the alleged insufficiency of Plaintiff's allegations, and the Court considers his arguments in consideration of that Motion.

IV.     **State Defendants' Motion to Dismiss (Motion No. 37)**

A.     **Scope of Relief Available**

The Court first clarifies the scope of relief available to Plaintiff as a matter of law pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint does not specify whether the claims against the State Defendants are brought against them in their official or individual capacities, but he requests only monetary relief, not injunctive relief. Section 1983 permits claims against state employees for monetary damages arising from violations of the U.S. Constitution. However, a suit against state employees in their official capacities is considered to be a suit against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment protects states and their agents from suit in their official capacities. *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000). Further, "[n]either states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). Accordingly, to the extent that Plaintiff makes any constitutional claim under § 1983 against State Defendants in their official capacities, his claims must be dismissed.

However, § 1983 does provide for compensatory and punitive damages for violations of federal law by state employees in their individual capacities. *See generally Griffith v. State of Colo., Div. Of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994) (citations omitted). In Plaintiff's "Request for Relief," he requests "relief for actual pain and suffering in an amount to be set by the jury following trial in this action" and for "future pain and suffering." *Complaint* [#16] at 8. Any claim for damages for pain and suffering must be predicated on a finding that Plaintiff sustained an actual injury, as opposed to emotional or mental harm. *See generally Perkins v. Kansas Dept. of Corr.*, 165 F.3d 803, 808 n.6 (10th

14

Cir. 1999) (citing Prison Litigation Reform Act ("PRLA"), 42 U.S.C. § 1997e(e)).

Plaintiff also requests punitive damages. *Complaint* [#16] at 8. To state a basis for an award of punitive damages, Plaintiff must claim that Defendants acted with an evil intent or with reckless indifference. *Smith v. Wade*, 461 U.S. 30, 56 (1983). State Defendants do not argue that Plaintiff fails to allege facts to support a finding that State Defendants acted with evil intent or reckless indifference, and Plaintiff's claim for punitive damages should proceed at this stage of the litigation.

## B.     Claim One: Inadequate Medical Treatment

Plaintiff alleges that State Defendants violated the Eighth Amendment by giving him inadequate medical treatment and ignoring his complaints about his knee and related ailments. The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend VIII. It requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, *i.e.*, an extreme deprivation. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and internal quotation marks omitted). Here, the

main issue is the medical care that was provided to Plaintiff.[7]  "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

Defendants do not argue that Plaintiff has failed to allege a serious medical need. *See Motion No. 37* [#37] at 4.  Nor is it likely that they could do so successfully, given Plaintiff's detailed allegations as to his serious knee injuries, multiple surgeries, and extreme pain.  The Court concludes that Plaintiff's Complaint sufficiently alleges the objective element of his claim.  *See, e.g.*, *Stine v. Swanson*, No. 07-cv-00799-WYD-KLM, 2008 WL 4330568, at *12 (D. Colo. Sept. 18, 2008) (finding objective component of Eighth Amendment claim met where plaintiff was diagnosed with "serious knee injury" of "possible meniscus tear" and "recommended for surgery").

As to the subjective component, the Court considers whether Plaintiff sufficiently alleges that Defendants intended a deprivation, *i.e.*, acted with deliberate indifference to the harm that could result.  Deliberate indifference can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.  That is, "[f]or a prison official to be found liable of deliberate indifference under the Eighth Amendment, the official must  both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference."  *Perkins*, 165 F.3d at 809-10 (citing *Farmer*, 511 U.S. at 837); *see also*

---

[7] The Eighth Amendment claim against Defendant Johnson concerns Defendant Johnson's alleged deliberate disregard of Plaintiff's safety, not the medical care given to Plaintiff.  That claim is addressed below.  *See* Part IV.B.9 at 31-33.

*Sparks v. Rittenhouse*, 164 Fed. App'x 712, 717 (10th Cir. 2006) (citations and internal quotation marks omitted) (describing subjective component as being when defendant disregarded risk by "failing to take reasonable measures to abate it"). In addition, "[c]ausation is also a necessary element of a § 1983 action." *Sparks*, 164 Fed. App'x at 718.

Evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the Defendant's participation, control, or direction. *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006); *Whitelow v. Stanley,* 06-cv-02256-ZLW-MEH, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007). Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Instead, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Thus, for Plaintiff's claims against each individual Defendant to survive this Motion to Dismiss, Plaintiff must allege that the individual personally participated in the alleged constitutional violations.

Plaintiff's allegations against State Defendants focus on the quality of the medical services received, the delay in receiving medical treatment, and the recent denial of any

further treatment of his knee.  The Court considers the viability of Plaintiff's claims against each individual Defendant in turn.

1.    Defendant Milyard

Defendants Milyard moves to dismiss Claim One against him because Plaintiff has not alleged sufficient facts to demonstrate Defendant Milyard's personal participation in the claimed unconstitutional conduct.

Plaintiff does not name Defendant Milyard in the factual allegations supporting Claim One.  *See Complaint* [#16] ¶¶ 1-107.  Plaintiff therefore does not allege sufficient personal participation on the part of Defendant Milyard to support a claim against him under Claim One.  To the extent Plaintiff has alleged a claim based on Defendant Milyard's role as Warden of SCF, Defendant Milyard's supervisory role is insufficient to establish liability for the wrongs alleged by Plaintiff in Claim One.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *see also Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992) (noting that in order to plead the liability of a supervisor, a plaintiff must show he knew plaintiff's rights were being violated but did not prevent it); *Serna*, 455 F.3d at 1151 (holding that "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights'").  Accordingly, Plaintiff's attempt to state a claim against Defendant Milyard in Claim One fails, and the claim should be dismissed without prejudice as to Defendant Milyard.

2.    Defendant Dowis

Defendant Dowis also argues that Plaintiff's Claim One fails as to her because Plaintiff did not allege sufficient personal participation.  Plaintiff alleges that he wrote a letter

to Defendant Dowis, whom he identifies as the "Hospital Administrator," "complaining of incidents of extreme lightheadedness, dizziness with extreme headaches and periods where Plaintiff became disoriented with loss of equilibrium, loss of speech and loss of ability to read or comprehend." *Complaint* [#16] ¶ 97. Plaintiff also alleges that he "contacted" Defendant Dowis and "complained that Ms. Stock had threatened and refused Plaintiff treatment and that Plaintiff's pain and instability was worsening and that Plaintiff was also suffering severe headaches, dizziness, and Plaintiff would sometimes lose the ability to form words or sentences and the ability to read." *Id.* ¶ 100.

The issue here is whether Plaintiff's complaints to Defendant Dowis, whom he identifies by her job title, are sufficient to allege an affirmative link between Defendant Dowis and the alleged Eighth Amendment violation. "The first aspect of the affirmative link is the supervisor's own conduct, that [s]he 'actively participated or acquiesced in the constitutional violation.'" *Serna*, 455 F.3d 1146, 1152 (quoting *Holland v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001)). "The evidence may take various forms: 'the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'" *Id.* (quoting *Holland*, 268 F.3d at 1187). "A plaintiff may also establish an affirmative link where the supervisor 'tacitly authorized the offending acts.'" *Id.* (quoting *Wever v. Lincoln County*, 388 F.3d 601, 60 (8th Cir. 2004)).

The Court concludes that Plaintiff has not sufficiently alleged an affirmative link between Defendant Dowis and the alleged constitutional violation. His identification of Defendant Dowis as the "Hospital Administrator" is insufficient. He fails to allege any action by Defendant Dowis, and fails to assert that she had ultimate responsibility for all decisions to provide medical care at SCF or failed to supervise her employees. *See Gallagher v.*

*Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted and internal quotations omitted) ("Supervisory status alone does not create § 1983 liability. Rather, there must be an affirmative link between the constitutional deprivation and either the supervisor's personal participation, [her] exercise of control or direction, or [her] failure to supervise."). While Plaintiff's allegations that he complained to Defendant Dowis about the treatment he was receiving are sufficient to establish that Defendant Dowis had notice of the wrongs alleged, Plaintiff must also allege that she "had an independent responsibility for the wrong in question." *Arocho v. Nafziger*, No. 09-1095, 2010 WL 681679, at *10 (10th Cir. March 1, 2010) (finding § 1983 claim against prison warden for failure to provide adequate medical care properly dismissed for failure to allege personal participation where "the complaint fails to allege grounds on which [defendant] could be held responsible for the medical decisions involved"). Accordingly, the Court recommends that Plaintiff's claims against Defendant Dowis be dismissed without prejudice.

      3.   <u>Defendant Pohlman</u>

As discussed above, Plaintiff alleges that Defendant Pohlman performed three surgical procedures on Plaintiff. Plaintiff alleges that after the first surgery in 2002, Defendant Pohlman disregarded Plaintiff's complaints of pain and instability in his knee until finally Plaintiff underwent another MRI which showed that the first surgery, an ACL reconstruction, had failed. *See Complaint* [#16] ¶ 8-13. Instead, Defendant Pohlman diagnosed Plaintiff as having "muscle fatigue" due to his failure to properly exercise to rehabilitate his knee. *Id.* ¶ 10. Plaintiff claims that Defendant Pohlman's original diagnosis following Plaintiff's first surgery was "grossly negligent." *Id.* ¶14. Plaintiff also alleges that Defendant Pohlman misled him as to the medical procedure that Defendant

Pohlman used during Plaintiff's second knee surgery, *id.* ¶26, and that following Plaintiff's fall after the second surgery, Defendant Pohlman failed to examine whether his second ACL reconstruction remained intact. More than negligence is required for an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). However, Plaintiff goes on to allege that some time in 2004, Plaintiff "asked to see Dr. Pohlman" and Defendant Pohlman "refused to examine Plaintiff." *Complaint* [#16] ¶ 88. Liberally construing Plaintiff's Complaint, as I must, and noting the extensive medical history Plaintiff had with Defendant Pohlman by 2004, the Court finds that Plaintiff has stated an Eighth Amendment claim for denial of medical treatment. Accordingly, the Court recommends that an Eighth Amendment claim against Defendant Pohlman remain pending.

### 4. Defendant Singh

Plaintiff alleges that Defendant Singh was involved in his medical treatment at SCF at three separate times during the events described in the Complaint: (1) following Plaintiff's 2002 surgery; (2) following Plaintiff's 2003 surgery; (3) some time in 2004. *See Complaint* [#16] ¶¶ 7, 9, 11, 58, 59, 87, 91.[8] The Court examines Plaintiff's allegations regarding each of these time periods in turn.

Plaintiff begins by alleging in general terms that Defendant Singh did not provide treatment to his knee following his September 2002 surgery, despite the fact that Plaintiff experienced extreme pain. *See Complaint* [#16] ¶ 7 (alleging that Plaintiff "request[ed] to see Dr. Singh"), ¶ 9 (alleging that Defendant Singh "ignored" Plaintiff's pain), ¶ 11 (alleging that Defendant Singh would not provide treatment). The Court concludes that these

---

[8] Defendant Singh does not argue that Plaintiff fails to sufficiently allege his personal participation in the alleged constitutional violation, and construing Plaintiff's Complaint liberally, the Court finds sufficient allegations to support a finding that Plaintiff has pled an affirmative link between Defendant Singh and the medical treatment Plaintiff received.

allegations support an Eighth Amendment claim against Defendant Singh. Plaintiff alleges that he was in pain, and he alleges that Defendant Singh denied him treatment. Plaintiff further alleges that Defendant Singh "ignored" his complaints, which allows an inference that Defendant Singh had knowledge of the substance of those complaints. In addition, the allegations of the Complaint as a whole demonstrate that Defendant Singh had general background knowledge of Plaintiff's medical condition. The subjective component of an Eighth Amendment claim requires that the defendant knew or had reason to know of the plaintiff's serious medical needs, and the Court accordingly finds a cognizable Eighth Amendment claim based on the allegations related to Defendant Singh's actions in 2002.

Next, and more specifically, Plaintiff alleges that his wound was not healing properly following his emergency surgery after he returned to SCF in early November 2003 and that Defendant Singh refused to provide him treatment despite his complaints to him about his condition. *Id.* ¶¶ 58, 59. Plaintiff further alleges that on or about December 5, 2003, Plaintiff's condition worsened, housing staff contacted medical services, and Plaintiff was examined. *See id.* ¶¶ 67-70. Plaintiff states that after he was examined, Defendant Singh was contacted at home, and "Plaintiff was ordered transported to the Denver Receiving and Diagnostic Center infirmary for I.V. antibiotic treatment." *Id.* ¶ 69. Thus, taking Plaintiff's allegations as true, in late 2003, after approximately four weeks of pain and complaints, Defendant Singh ordered Plaintiff to receive further treatment.

The Court considers whether Plaintiff has sufficiently alleged an Eighth Amendment violation based on the delay of treatment from November 2003 to December 5, 2003. *See Sealock* v. *Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (noting that "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the

delay resulted in substantial harm"); *see also Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (finding that substantial harm includes "lifelong handicap, permanent loss, or considerable pain"). Plaintiff alleges that during that time he was in "severe pain" and that his knee became worse, and that a "constant, putrid smelling, viscous fluid was bubbling and draining from the knee wound" and that the wound became "swollen and hot to the touch" and was "extremely painful." *Id.* ¶¶ 60-65. While these allegations paint a vivid picture of Plaintiff's suffering from an infection without benefit of medical treatment, it is not clear from his allegations that Defendant Singh knew or had reason to know how severe Plaintiff's condition was. Plaintiff alleges only that early on in the healing process, he complained to Defendant Singh that his wound was not healing properly. He further alleges that when a nurse actually examined his knee and contacted Defendant Singh – and when the allegations therefore support an inference that Defendant Singh had knowledge of the severity of his condition – Defendant Singh immediately ordered him brought to DRDC for intravenous antibiotic treatment. The Court concludes, taking the allegations as a whole, that Plaintiff has alleged "substantial harm" resulting from the delay. However, he has not alleged that Defendant Singh was deliberately indifferent to his serious medical needs during this time period. At most, he has alleged that Defendant Singh was negligent in failing to examine his knee upon his initial complaint that it was not healing well. More than negligence is required for an Eighth Amendment violation, see *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976), and when presented with information of the seriousness of Plaintiff's condition, Defendant Singh acted to provide treatment.

Plaintiff further alleges that following his return to SCF on December 23, 2003, despite his continued pain, pain medication "had been discontinued months earlier," and

Defendant Singh "informed" Plaintiff that he could "purchase Tylenol from the canteen [but] Plaintiff had no funds to do so." *Id.* ¶ 87. In February of 2007, according to the allegations of the Complaint, Plaintiff was again given "2000 mgs of Tylenol per day." *Id.* ¶ 104. However, following his return from DRDC in December 2003, until February of 2007, taking the allegations of the Complaint as true, Plaintiff received no pain medication. He describes his knee as "extremely painful" and states that he was unable to sleep due to severe pain. *Id.* ¶¶ 87, 89. "An allegation of denial of pain medication may form the basis for a deliberate indifference claim." *Benning v. Webster*, No. 08-cv-00399-PAB-CBS, 2009 WL 798861, at *7 (D. Colo. March 24, 2009) (citations omitted). While temporary denials of medications cannot serve as the basis for a deliberate indifference claim, here Plaintiff alleges he was denied pain medication more than three years. *Cf. Lane v. Klinger*, 25 Fed. App'x 781, 783-84 (10th Cir. 2001) (finding no Eighth Amendment claim where pain medication denied for three hours); *Jackson v. Simmons,* No. CIV. A. 99-3363-KHV, 2001 WL 951008, at *5 (D. Kan July 26, 2001) (finding no Eighth Amendment claim where pain medication denied for one day). Furthermore, as noted above, taking Plaintiff's allegations as a whole, it is clear that Defendant Singh was familiar with Plaintiff's medical history concerning his knee, allowing an inference that Defendant Singh was aware he was suffering from pain. The Court concludes Plaintiff has stated a cognizable claim against Defendant Singh for denial of pain medication.

The Court next considers whether Plaintiff's allegations that Defendant Singh was a part of a Committee which determined that it "would not authorize or provide and [sic] additional consultation or treatment associated with Plaintiff's left knee injury," *Complaint* [#16] ¶ 91, are sufficient to state an Eighth Amendment claim. Plaintiff does not state

exactly when the Committee decision was allegedly made. Assuming that he has presented his allegations in roughly chronological order, the decision occurred sometime between August 2004 and November 2004. Plaintiff states that the decision was made "without [his] having been examined or evaluated." *Id.* However, Plaintiff had been examined as recently as August 27, 2004. *Id.* ¶ 90. Plaintiff's allegations here amount to nothing more than an assertion that Defendant Singh exercised his medical judgment that Plaintiff did not require additional treatment as of late 2004. *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment."). An inmate's difference of opinion concerning the medical treatment he received does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993). Furthermore, Plaintiff's allegation that in "November or December of 2005" an unidentified medical professional examined Plaintiff and determined that Plaintiff needed additional surgery does not transform Defendant Singh's decision to deny further surgery into deliberate indifference to Plaintiff's medical needs. Deliberate indifference is not demonstrated when one doctor recommends surgery and another does not. *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Benning*, 2009 WL 798861, at *6 (conflicting opinions of doctors on need for surgery is a question of medical judgment, not cruel and unusual punishment). Most importantly, however, Plaintiff's allegations do not support a claim that he actually was denied all treatment for his knee. He was seen by a medical professional in late 2005, he was seen by Defendant Stock, also a medical professional, at a later date, and he received another MRI in January of 2006. *See Complaint*, ¶¶ 93, 99, 104; *see, e.g.*, *Inman v. Stock*, 248 Fed. App'x 892, at

25

*3 (10th Cir. 2007) (finding subjective component not met where plaintiff had broken bone, upon complaint defendant examined it and upon further complaints, examined it again and ordered x-rays and prescribed medication and arranged appointment with orthopedic surgeon when x-rays showed broken bone).

Accordingly, the Court recommends that an Eighth Amendment claim based on Defendant Singh's actions in 2002 and denial of pain medication remain pending and all other claims against him be dismissed without prejudice.

5.    Defendant Rittenhouse

Plaintiff makes some of the same allegations against Defendant Rittenhouse that he makes against Defendant Singh.  Specifically, he alleges that Defendant Rittenhouse denied him pain medication, *Complaint* [#16] ¶ 87, and that Defendant Rittenhouse was also a member of the Committee which determined that Plaintiff's knee did not require further treatment, *id.* ¶ 91.  For the same reasons as those stated above in the analysis of these claims as to Defendant Singh, the Court finds that Plaintiff has stated a claim against Defendant Rittenhouse for denial of pain medications but not for her determination that Plaintiff's knee did not need further treatment.

Plaintiff also alleges that at an unidentified time, he "continued to complain to Ms. Rittenhouse . . . who assured me that my complaints would be submitted to the Chief Medical Officer and Utilization Committee."  *Id.* ¶ 101.  This allegation alone is insufficient to state an Eighth Amendment claim.  Plaintiff's allegations suggest that Defendant Rittenhouse fulfills a gatekeeper function, and medical personnel serving "as a gatekeeper for other medical personnel capable of treating the condition may be liable under the deliberate indifferent standard if [s]he delays or refuses to fulfill that gatekeeper role."

26

*Sealock*, 218 F.3d at 1211.  However, Plaintiff does not allege that Defendant Rittenhouse failed to actually pass along his complaints or that any failure resulted in Plaintiff not receiving treatment.  *See Sparks*, 164 Fed. App'x at 719 (finding causation and affirmative link for Eighth Amendment claim sufficiently pled where plaintiff alleged defendant failed to secure further treatment for plaintiff, plaintiff suffered from lack of treatment, and upon his transfer to another corrections facility, defendant's counterpart secured treatment quickly).

Accordingly, the Court recommends that an Eighth Amendment claim based on denial of pain medication remain pending against Defendant Rittenhouse and all other claims against her be dismissed without prejudice.

6.      Defendant Fortunato

Plaintiff alleges that he "complained to Dr. Fortunato, who ignored all Plaintiff's requests for medical attention." *Complaint* [#16] ¶ 104.  This statement does not sufficiently allege an affirmative link between the harm Plaintiff alleges he suffered and actions by Defendant Fortunato. Plaintiff does not allege that Defendant Fortunato "participated or acquiesced" in the alleged constitutional violation.  *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).   Nor  does Plaintiff allege sufficient facts to establish that Defendant Fortunato had knowledge of Plaintiff's condition.  Accordingly, the Court recommends that all claims against Defendant Fortunato be dismissed without prejudice.

7.      Defendant Frantz

Plaintiff alleges that Defendant Frantz, a physician, examined him in February 2007. *Complaint* [#16] ¶ 104.  He further alleges that despite a January 2006 MRI that "showed that Plaintiff's left knee was essentially unchanged from the September 2003 MRI which

was the MRI that justified the second operation on Plaintiff's knee by showing that the ACL graft had not taken," *id.* ¶ 103, Defendant Frantz refused to provide Plaintiff further "treatment or surgery" because Plaintiff "was an extremely poor investment" as he was sixty years old, "not a track star," and "likely to die in prison." *Id.* ¶ 104. Plaintiff alleges that Defendant Frantz determined that he would receive a daily dose of Tylenol to alleviate any pain and a cane. *Id.* According to Plaintiff's allegations, he has received no further medical attention since February of 2007.

Plaintiff has specifically alleged that medical personnel determined that Plaintiff required knee surgery in September 2003 and a medical professional also opined in 2005 that Plaintiff's knee required surgery. According to Plaintiff's allegations, he suffered from continuing and extremely severe pain from 2005 forward, a 2006 MRI that showed that his 2003 ACL graft had failed, and the decision by Defendant Frantz to nevertheless deny him any treatment other than Tylenol was made only in order to save money.

As discussed above, no Eighth Amendment claim is stated where Plaintiff's allegations merely establish that Plaintiff disagrees with decisions made about his medical care. *See Ramos v. Lamm*, 639 F. 2d 559, 575 (10th Cir. 1980) (finding no Eighth Amendment claim where inmate and medical staff had difference of opinion as to inmate's treatment or diagnosis); *see also Perkins*, 165 F.3d at 811. It is a close question whether Plaintiff's allegations here support a finding that Plaintiff merely disagrees with the course of treatment provided by Defendant Frantz. However, the Court finds that at this stage of the litigation, Plaintiff's allegations are sufficient to allege that the treatment provided by Defendant Frantz was constitutionally inadequate. *Cf. Honeycutt v. Mitchell*, No. CIV-08-140-W, 2009 WL 14214444 (W.D. Okla. April 3, 2009) (denying motion for summary

judgment on Eighth Amendment claim for denial of medical treatment, relying on cases from other Circuits for proposition that an inmate not entitled to "unlimited medical care without regard to cost" and noting that "[c]ost is a legitimate consideration, and the constitution permits officials to decline certain kinds of expensive treatment *if they provide adequate medical care*" (emphasis added)). The Court concludes that Plaintiff sufficiently alleges that Defendant Frantz refused to provide adequate medical care in violation of the Eighth Amendment, and his claim against her should not be dismissed at this stage of the litigation. *See, e.g.*, *Catman v. Corrs. Corp. of Am.*, No. 08-cv-01770-LTB-MEH, 2009 WL 943719, at *55 (D. Colo. April 6, 2009) (finding Eighth Amendment claim stated by plaintiff-inmate where plaintiff alleged that prison medical official found that plaintiff required vaccine but refused to provide it in order to save money, and plaintiff subsequently fell ill with the sickness that the vaccine would have prevented). *Cf. Holt v. Werholtz*, 185 Fed. App'x 737, at *3 (10th Cir. 2006) (finding subjective component not met where plaintiff alleged severe shoulder pain and unheeded need for corrective surgery, where plaintiff was prescribed medication for pain and plaintiff's belief that surgery absolutely required was "conclusory"). Accordingly, the Court recommends that an Eighth Amendment claim for denial of medical treatment remain pending against Defendant Frantz.

8.  <u>Defendant Stock</u>

Plaintiff alleges that he complained to Defendant Stock, and that Defendant Stock informed him that she found "nothing wrong with Plaintiff's knee and Plaintiff did not need wraps or a cane." *Complaint* [#16] ¶ 99. Plaintiff further alleges that Defendant Stock threatened to "write [Plaintiff] up for misuse of medical services." *Id.* The Court finds that Plaintiff has not alleged facts sufficient to support an Eighth Amendment claim against

Defendant Stock. Rather, Plaintiff's allegations simply assert that Defendant Stock had an opinion about Plaintiff's medical needs that Plaintiff does not share. "[S]uch a difference of opinion amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal § 1983 action . . . . [A] medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. Civ.A. 95-3006-GTV, 1998 WL 154552, at *2 (D. Kan. Mar.17, 1998) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his knee injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim). As was the case in *Pearson*, "Plaintiff was not denied medical treatment, rather he merely disagrees with defendant's medical judgment." *See id.* This, without more, is not sufficient for a plausible Eighth Amendment claim. Accordingly, the Court recommends that all claims against Defendant Stock be dismissed without prejudice.

　　9.　　Defendant Johnson

　　Defendant Johnson contends that Plaintiff's allegations against him are "vague and conclusory" and therefore insufficient to state a viable Eighth Amendment claim. Specifically, Plaintiff alleges that Defendant Johnson was the "Living Unit-4 Housing Sergeant" when Plaintiff was assigned to Living Unit-4 on November 23, 2005. *Complaint* [#16] ¶ 95. Plaintiff further alleges that despite knowing that Plaintiff's knee condition made it dangerous for Plaintiff to be in a top bunk, Defendant Johnson nevertheless assigned Plaintiff to a top bunk. *Id.* ¶ 98. Plaintiff alleges that he fell from the top bunk, "sustaining a severe head injury and left knee and leg injury requiring an ambulance trip . . . and hospitalization." *Id.* ¶ 95. Plaintiff goes on to describe the seriousness of the harm done to him by the fall. *Id.* ¶¶ 96-98. The Court finds that Plaintiff has sufficiently alleged that

Defendant Johnson "knew of and chose to disregard a significant risk" to Plaintiff's health by requiring Plaintiff to sleep in the top bunk in his cell. *See Farmer*, 511 U.S. at 828 (finding Eighth Amendment violated where prison official acts with deliberate indifference to substantial risk of serious harm to an inmate); *see also Grady v. Edmonds*, No. 06-cv-01612-DEM-PAC, 2007 WL 2986167, at *5-6 (D. Colo. June 11, 2007) (finding Eighth Amendment violated where prison official, despite being aware of plaintiff's medical condition, ordered that plaintiff perform work duties that caused plaintiff extreme pain and where plaintiff eventually fell and injured himself).

Construing this *pro se* Complaint liberally, as it must, the Court further finds that Plaintiff has alleged a First Amendment retaliation claim against Defendant Johnson. *See generally Haines*, 404 U.S. 594; *Castillo v. United Parcel Service*, No. 06-cv-00668-MSK-KLM, 2008 WL 486082, at *3 (D. Colo. Feb. 19, 2008) (noting court's "duty to construe [*pro se* plaintiff's] factual allegations to state any cognizable claim"). The Tenth Circuit has held that "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir.1998) (citation omitted). To establish a retaliation claim, a plaintiff must demonstrate: "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Plaintiff contends that after Plaintiff filed a grievance against him, Defendant Johnson "began to escalate his harassment of Plaintiff by frequently shaking down Plaintiff's cell and illegally confiscating as contraband all but one of Plaintiff's elastic wraps [used to exercise his knee] and the cane that Plaintiff needed to safely walk." *Complaint* [#16] ¶ 98. An inmate's use of the prison grievance process is protected First Amendment conduct, and Plaintiff adequately alleges that as a result of his engaging in that conduct, Defendant Johnson wrongfully confiscated Plaintiff's belongings. Importantly, Plaintiff alleges that Defendant's confiscation of his cane affected Plaintiff's ability to walk safely. Accordingly, the Court concludes that Plaintiff has plausibly alleged conduct sufficient to satisfy all three elements of his retaliation claim. The Court recommends that an Eighth Amendment claim and a First Amendment retaliation claim remain pending against Defendant Johnson.

      10.    <u>Qualified Immunity</u>

Regardless of whether Plaintiff has plausibly shown the violation of any constitutional rights, Defendants argue that they are entitled to qualified immunity. Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-18(1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. When the defense of qualified immunity is raised, the Court must consider whether Plaintiff's factual allegations demonstrate that Defendants violated a constitutional right and whether that constitutional right was clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533

U.S. 194, 200-01 (2001) (denoting two-part inquiry); *see also Pearson v. Callahan*, ___

U.S. ___, 129 S. Ct. 808, 818 (holding that district court may consider the two-parts of the

necessary inquiry in any order deemed appropriate) (2009). "If the plaintiff fails to satisfy

either part of the two-part inquiry, the court must grant the defendant qualified immunity."

*Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001) (citing Albright v. Rodriguez, 51 F.3d

1531, 1535 (10th Cir.1995)). As discussed above, the Court has found that Plaintiff states

the following claims for constitutional violations: (1) an Eighth Amendment claim against

Defendants Singh and Rittenhouse for denial of pain medication; (2) an Eighth Amendment

claim against Defendants Pohlman, Singh, and Frantz for denial of adequate medical

treatment; (3) an Eighth Amendment claim against Defendant Johnson for assigning

Plaintiff to the top bunk; and (4) a First Amendment retaliation claim against Defendant

Johnson for retaliating against Plaintiff after Plaintiff filed a grievance against him. The

Court found that with respect to all other claims, Plaintiff failed to plausibly allege a

constitutional violation, and therefore Defendants are entitled to qualified immunity as to

those claims.

The Court now considers whether Defendants Pohlman, Singh, Rittenhouse, Frantz,

and Johnson are entitled to qualified immunity. Because Plaintiff has plausibly alleged that

Defendants Pohlman, Singh, Rittenhouse, Frantz, and Johnson deprived Plaintiff of his

constitutional rights, the remaining consideration is whether the rights at issue were "clearly

established when the alleged violation occurred." *Mimics, Inc. v. Village of Angel Fire*, 394

F.3d 836, 841 (10th Cir. 2005) (citation omitted).

The Court concludes that at this stage of the litigation, Defendants are properly

denied qualified immunity. Plaintiff's allegations that Defendants Pohlman, Singh,

Rittenhouse, Frantz, and Johnson violated his Eighth Amendment right to appropriate medical care state claims of violations of a clearly established law. *See generally Bennington*, 2009 WL 798861, at *9 (D. Colo. March 24. 2009) (denying qualified immunity on motion to dismiss for claim of denial of pain medication); *Martin v. Sherrod*, No. 06-cv-00625-WDM-CBS, 2007 WL 1832036 (D. Colo. June 25, 2007) (citing *Estelle v. Gamble*, 429 U.S. at 97)) (denying qualified immunity for Eighth Amendment violation for denial of medications and treatment, among other allegations, because constitutional right clearly established)*; Freeman v. Knight*, No. 04-cv-00148-MSK-PAC, 2005 WL 1896245, at *5 (D. Colo. Aug. 8, 2005) (noting that the court "need not conduct an expansive review of authority to recognize that the Eighth Amendment long-ago established that a prison official's seizure of items necessary for a medically-approved treatment without regard to the inmate's health is prohibited"). The Court concludes that at this stage of the litigation, Defendants are not entitled to qualified immunity as to the Eighth Amendment claims made against them.

Furthermore, Defendant Johnson is not entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim against him. It is clearly established that a prison official may not retaliate against an inmate who files a grievance against him. *See Parker v. Ritter*, No. 08-00737-MSK-KLM, 2010 WL 1286081, at *9 (D. Colo. March 25, 2010) (citing *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992)); *Bell v. Pollack*, No. 07-cv-00496-REB-MEH, 2008 WL 652324, at *7-8 (D. Colo. March 10, 2008) (citing *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Purkey v. Green*, 28 Fed. App'x 736, 746 (10th Cir. 2001)) (noting that part of First Amendment right of access to court included right to first file

internal grievance against prison official and finding that right to be free from retaliation for filing grievance clearly established).[9]

## C.    Claim Two: Conditions of Confinement

In Claim Two, Plaintiff alleges an Eighth Amendment violation based on the conditions of his confinement.  Plaintiff names only Defendant Milyard in this claim, and he specifically identifies the following aspects of his conditions of confinement as being unconstitutional:   noise of "extreme decibel levels," *Complaint* [#16], Claim Two, ¶ 1; "behind the back cuffing that resulted in shoulder dislocations," *id.* ¶ 2; being sprayed with pepper spray despite his being "a heart patient with breathing difficulties," *id.* ¶ 3; and, very generally, that he was "denied necessary medical treatment and medication" as well as "special diet for food allergies that resulted in incidents of near loss of life that were ignored or given short shrift," *id.* ¶ 4.  As discussed above, an affirmative link must exist between the alleged constitutional violation and the Defendant's participation, control or direction. *Serna*, 455 F.3d at 1151-52 (10th Cir. 2006); *Whitelow,* 2007 WL 4268961, at *6. Defendant Milyard's supervisory role is insufficient to establish liability for the wrongs alleged by Plaintiff in Claim One.  *See Pembaur*, 475 U.S. at 479; *Woodward,* 977 F.2d at 1399-1400.  Plaintiff's Claim Two against Defendant Milyard fails for failure to allege any personal participation by Defendant Milyard in the alleged constitutional violation. Accordingly, Claim Two against Defendant Milyard should be dismissed without prejudice.

## D.    Claim Three

---

[9] In addition to the allegations against the individual Defendants discussed in this section, Plaintiff also alleges wrongdoing on the part of unnamed individuals, see, e.g., *Complaint* [#16] ¶ 62, including allegations that unnamed prison officials failed to make safe an icy sidewalk and laughed when Plaintiff fell, *id.* ¶¶ 54-55.  To whatever extent these portions of Plaintiff's Claim One state an Eighth Amendment claim, they are dismissed for failure to allege personal participation of any named individual.

In Claim Three, Plaintiff alleges that Defendant Milyard "set the policy and enforces the rules governing the operation of SCF's segregation housing." *Complaint* [#16], Claim Three. Plaintiff alleges that as a result of those policies, Plaintiff's legal files were confiscated when he was assigned to segregated housing in March 2007. *Id.* ¶ 1. Plaintiff further alleges that he requested access to his legal materials so that he could respond to an order to show cause issued by the Colorado Court of Appeals regarding why an appeal should not be dismissed shortly before he was assigned to segregated housing. *Id.* ¶¶2-4. He alleges that as a result, his appeal was dismissed. *Id.* ¶5.

Defendant Milyard's alleged responsibility for an unidentified prison policy is not a sufficient link between the alleged unconstitutional conduct and Plaintiff's claimed harm. In *Whitington v. Ortiz*, 307 Fed. App'x 179, 190-91 (10th Cir. 2009), the court dismissed claims against the Executive Director of CDOC because plaintiff's allegations "rest[ed] almost entirely on the premise that [defendant] was responsible for regulations which [plaintiff] claim[ed] [were] unconstitutional and which, as applied, infringed [plaintiff's] constitutional rights." *Id.* at 190. The court concluded that plaintiff's claim failed because he lacked standing to sue in an "attempt to re-regulate the entire CDOC system," the regulations were not clearly unconstitutional on their face, and plaintiff "fail[ed], except for conclusory allegations, to sufficiently allege direct personal participation by [defendant] in [plaintiff's] claimed injury." *Id.* at 191. For the same reasons, Plaintiff's Claim Three against Defendant Milyard fails and should be dismissed.

In sum, as detailed above, the Court respectfully **RECOMMENDS** that State Defendants' Motion No. 37 be **DENIED in part and GRANTED in part**.

## V. Defendant Sterling Regional Medical Center's Motions to Dismiss (Motions No. 50 & 51)

Defendant SRMC has filed two motions to dismiss in this matter [Motion Nos. 50 & 51]. Its *Reply* [#66] makes clear that Motion No. 51, which seeks dismissal due to Plaintiff's failure to file a certificate of review as required by COLO. REV. STAT. § 13-20-602(1)(a), (4), is intended to provide alternative grounds for dismissal should the Court deny Defendant SRMC's Motion No. 50, which seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief. Because this Court recommends granting Defendant SRMC's Motion No. 50, the Court also recommends denying as moot Defendant SRMC's Motion No. 51.[10]

Defendant SRMC argues that the only wrongdoing alleged in Plaintiff's Complaint related to Defendant SRMC is alleged wrongdoing by doctors who treated Plaintiff in SRMC's facilities. Further, Defendant SRMC argues that as a matter of law it cannot be held liable for the actions of a doctor practicing medicine at the hospital. In his Response, Plaintiff contends that Defendant SRMC breached a contract or somehow conspired with other Defendants to provide sub-standard care to Plaintiff.

Nowhere in his Complaint does Plaintiff allege any wrongdoing by SMRC. Rather, he alleges that SRMC was "under contract by the CDOC and SCF to provide Plaintiff with proper, competent medical care." *Complaint* [#16] ¶ 7. Plaintiff also alleges that he received various medical procedures at SMRC and that he received negligent care. *See id.* ¶¶ 1, 3, 12, 13, 25, 40, 45-50. In addition, Plaintiff nowhere alleges that Defendant

---

[10] In his Response to Defendant SRMC's Motions, Plaintiff notes that he does not have a copy of his Complaint. *Response* [#63] at 2a. However, Plaintiff has submitted thorough responses to all of the Motions currently before the Court. The Court herein orders that a copy of his Complaint be sent to Plaintiff.

Pohlman or any other Defendant is an employee of Defendant SRMC. Moreover, as a matter of law, Defendant SRMC cannot be held liable liability for the acts of physicians who practice medicine at SRMC. *See Rosane v. Senger*, 149 P.2d 372, 374 (Colo. 1944); *Estate of Harper v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 275-77 (Colo. Ct. App. 2006). To the extent that Plaintiff states new claims against Defendant SRMC in his Response, these claims are not viable because Plaintiff cannot raise new claims against Defendant SRMC in his Response to its Motion. *See* Fed. R. Civ. P. 8.

Accordingly, the Court respectfully **RECOMMENDS** that Motion No. 50 be **GRANTED** and that all claims against Defendant SRMC be dismissed with prejudice. The Court further **RECOMMENDS** that Motion No. 51 be **DENIED as moot**.

## VII. Leave to Amend

Although portions of Plaintiff's Complaint cannot survive the Motions to Dismiss on the facts as alleged, the Court notes the liberal philosophy regarding amendment of pleadings reflected in both the Federal Rules of Civil Procedure and years of legal precedent, especially when the timing of the amendment and potential prejudice to Defendant do not weigh against it. *See* Fed. R. Civ. P. 15(a), *Miner v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Because Plaintiff is proceeding *pro se*, and because the Court is not convinced that amendment would undoubtedly be futile or that it would in any meaningful way be prejudicial to Defendants, the Court recommends that Plaintiff be granted leave to file an amended complaint before the dismissal of his case is effected. *See Oxendine*, 241 F.3d at 1275.

The Court is mindful of Plaintiff's obligation pursuant to Fed. R. Civ. P. 11 to ensure the truthfulness of his statements to the Court. If Plaintiff cannot truthfully allege facts remedying the deficiencies in his first Complaint regarding the procedural barriers to suit (i.e., statute of limitations) or personal participation by Defendants, his amended complaint will suffer from the same fatal deficiencies noted above and undoubtedly be subject to summary dismissal.

## VIII.    Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that Motion No. 32 be **DENIED**.

The Court FURTHER **RECOMMENDS** that Motion No. 37 be **GRANTED in part and DENIED in part**.  Specifically, the Court **RECOMMENDS** that:

(1)    all claims against Defendant Milyard be **DISMISSED without prejudice**;

(2)    all claims against Defendant Fortunato be **DISMISSED without prejudice**;

(3)    all claims against Defendant Stock be **DISMISSED without prejudice**;

(4)    all claims against Defendant Singh and Defendant Rittenhouse be **DISMISSED without prejudice** except for Plaintiff's Eighth Amendment claim for denial of pain medication;

(5)    an Eighth Amendment claim for denial of adequate medical treatment remain pending against Defendants Pohlman, Singh, and Frantz; and

(6)    an Eighth Amendment claim and a First Amendment retaliation claim remain pending against Defendant Johnson.

The Court FURTHER **RECOMMENDS** that Motion No. 50 be **GRANTED** and all claims against Defendant Sterling Regional Medical Center be **DISMISSED with prejudice**.

The Court FURTHER **RECOMMENDS** that Motion No. 51 be **DENIED as moot**.

Given that the Court recommends that claims against Defendant Sterling Regional Medical Center be dismissed with prejudice,

The Court FURTHER **RECOMMENDS** that Defendant Sterling Regional Medical Center's Motion for Summary Judgment [Docket No. 73; Filed March 22, 2010] be **DENIED as moot**.

The Court FURTHER **RECOMMENDS** that Plaintiff be permitted to file an Amended Complaint within a reasonable time after entry of an Order by the District Court on this Recommendation.

IT IS FURTHER **ORDERED** that the Clerk of the Court shall mail to Plaintiff a copy of his Complaint [Docket No. 16].

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review

by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  May 4, 2010

<div style="margin-left: 40%;">

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge

</div>