IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-01041-CMA-KLM

EARL WILLIAM CAMPBELL, JR.,

      Plaintiff,

v.

KEVIN MILYARD, Warden,
DR. FLOYD POHLMAN, M.D.,
DR. GAGEN SINGH, M.D.,
DR. PAULA FRANTZ, M.D.,
KATHERN RITTENHOUSE, P.A.C.,
BRIAN R. WEBSTER, PAC, and
SERGEANT JOHNSON, LU-3,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendant Milyard's Motion to Dismiss the Final Complaint** [Docket No. 129; Filed September 15, 2010] ("Motion to Dismiss") and Plaintiff's **Combined Affidavit and Motion for a Preliminary Injunction; Temporary Restraining Order and/or for Any Relief Deemed Appropriate by the Court** [Docket No. 118; Filed August 30, 2010] ("Plaintiff's Motion").

      Defendants Milyard, Singh, Frantz, Rittenhouse and Johnson[1] responded in opposition to Plaintiff's Motion on September 16, 2010 [Docket No. 131].  Plaintiff did not file a reply nor did he file a response to the Motion to Dismiss.  The Motions are now ripe

_____

[1] To date, Defendant Webster has not been served despite repeated efforts by the U.S. Marshals Service.  Defendant Pohlman is not employed by the Colorado Department of Corrections and, therefore, cannot provide the injunctive relief sought by Plaintiff.

for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3., the Motions have been referred to this Court for a recommendation. Having reviewed the entire case file and being sufficiently advised, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED** and that Plaintiff's Motion be **DENIED**.

## I. Factual and Procedural Background[2]

Plaintiff, who is proceeding in this matter *pro se*, is currently incarcerated at the Sterling Correctional Facility ("SCF"). *Final Complaint* [#123] at 2. Defendant Milyard is the warden of SCF. The remaining Defendants either worked at SCF or provided medical care to Plaintiff during his incarceration there. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that "Defendants severally and collectively with extreme indifference to Plaintiff's serious medical needs . . . [caused] permanent physical and mental injury." *Id.* at 5. Plaintiff's allegations have already been the subject of motions to dismiss and Defendant Milyard was dismissed without prejudice to Plaintiff amending his allegations against this party. *Order* [#108] at 18-19. He did so and Defendant Milyard again challenges the sufficiency of the allegations against him.

Plaintiff's claims primarily relate to the medical care he received for his injured left knee. In September of 2002, Plaintiff underwent surgery to reconstruct the anterior cruciate ligament ("ACL") of his left knee. *Amended Complaint* [#16] at 6. Defendant Pohlman performed the procedure. *Id.* In the fall of 2003, after an MRI of the knee, Defendant

---

[2] For the purpose of resolving the Motions, the Court takes as true all plausible allegations made in the Final Complaint [Docket No. 123]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Final Complaint also references allegations previously made by Plaintiff in his Amended Complaint [Docket No. 16], which the Court also accepts as true here.

Pohlman informed Plaintiff that a second surgery was necessary because the original graft had not taken. *Id.* at 8-9. Defendant Pohlman performed a second procedure in October of 2003. *Id.* at 12. Soon after the 2003 procedure, Plaintiff fell on an icy sidewalk within the SCF complex. *Id.* at 13. Plaintiff was seriously injured by the fall, tearing open his recent surgical wound and hitting his head, rendering him unconscious. *Id.* Plaintiff received emergency medical attention, including emergency surgery to his left knee. *Id.* 13-14

Following the third surgery in the fall of 2003, and after his return to SCF, Plaintiff's left knee became infected. *Id.* at 18. On December 5, 2003, Plaintiff received medical treatment for his knee. *Id.* 19. Defendant Singh sent Plaintiff to Denver Reception and Diagnostic Center ("DRDC") for intravenous antibiotics. *Id.* Plaintiff underwent a fourth knee surgery on December 7, 2003. *Id.* He returned to SCF on December 23, 2003, and while his wound healed without further infection, Plaintiff remained in pain. *Id.* at 20. At some point following his return to SCF, he was denied any further pain medication by Defendants Singh and Rittenhouse. *Id.* In 2004, a committee at SCF determined that Plaintiff would receive no further surgery or treatment for his knee. *Id.* at 21.

Plaintiff continued to experience pain, and his condition was exacerbated by a fall from a top bunk requiring emergency treatment. *Id.* at 22. In late 2005, Plaintiff was examined by someone from McDonald Physical Therapy and Sports Medicine, who determined that Plaintiff's left knee required additional surgery. *Id.* at 21. Plaintiff was issued a knee brace, and in January of 2006, an MRI was taken of Plaintiff's knee. *Id.* at 23. The MRI showed that Plaintiff's ACL graft in his left knee still had not taken, meaning that Plaintiff's knee was in essentially the same condition as it had been prior to the

3

September 2003 surgery. *See id.* In February of 2007, Plaintiff was told by Defendant Frantz that he would not receive any further treatment of his left knee beyond authorization to use a cane and daily Tylenol. *Id.* Plaintiff contends that Defendants, including Defendant Milyard, are guilty of deliberate indifference to his serious medical needs. *Id.* at 6-24. In Plaintiff's Final Complaint, he also contends that Defendant Milyard's failure to ensure that the SCF sidewalks were clear of ice and snow and his failure to prevent Defendant Johnson's alleged retaliation constitute deliberate indifference.[3] *Final Complaint* [#123] at 7.

As noted above, the claims against Defendant Milyard were previously dismissed without prejudice because Plaintiff's Amended Complaint did not contain sufficient allegations to state a claim against him. *Order* [#108] at 11-13. In an attempt to remedy the pleading deficiencies in relation to Defendant Milyard, Plaintiff filed a Final Complaint which references back to the allegations asserted in the Amended Complaint and contains additional detail. *See Final Complaint* [#123] at 6-9. Pursuant to the Motion to Dismiss, Defendant Milyard raises lack of personal participation and qualified immunity as grounds for dismissal of Plaintiff's amended claims against him. *Motion to Dismiss* [#129] at 2-5.

Pursuant to Plaintiff's Motion, Plaintiff seeks three forms of injunctive relief: (1) that Defendants be enjoined from retaliating against him; (2) that Defendants be enjoined from placing him in certain units or certain bunk assignments; and (3) that Defendants be

---

[3] Claims Two (conditions of confinement/cruel and unusual punishment) and Three (access to the courts) from the Amended Complaint were asserted exclusively against Defendant Milyard. *See Amended Complaint* [#16] at 25-26. These claims were dismissed, see *Order* [#108] at 18-19, and I do not interpret the Final Complaint to re-assert them against Defendant Milyard. *See Final Complaint* [#123] at 16-17.

required to have Plaintiff examined by an outside specialist for his knee and head injuries. Notably, Plaintiff does not seek injunctive relief in his Final Complaint and limits his request for relief to damages. *See Final Complaint* [#123] at 19.

## II. Defendant Milyard's Motion to Dismiss

### A. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero*, 510 F.3d at 1200 (citing *Twombly*, 550 U.S. at 570). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint

must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*,129 S. Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### B.    Analysis

The Eighth Amendment protects Plaintiff against the deliberate failures and mistreatment of Defendants. As such, there is an intentional aspect that is associated with proving that a defendant committed deliberate indifference. Therefore, evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th

Cir. 1976).  An affirmative link must exist between the alleged constitutional violation and a defendant's purposeful participation or direction. *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006).  Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant.  *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996).  Instead, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  Thus, for Plaintiff's claims against Defendant Milyard to survive the Motion to Dismiss, Plaintiff must allege that he personally participated in the alleged constitutional violations.

In the Final Complaint, Plaintiff attempts to assert individual liability against Defendant Milyard for "his own individual actions and/or omissions inclusive of his failure to properly train and supervise those subordinates and designees he authorized and charged with the power and authority to act in his stead respecting the daily operations and maintenance of [SCF]." *Final Complaint* [#123] at 6-7.  In addition, Plaintiff contends that "Defendant Milyard is personally responsible (generally) for the daily, <u>past and present</u> operations and functions of SCF . . . .  It is his personal responsibility to assure that Plaintiff receives the proper care and treatment on a daily basis."  *Id.* at 7 (emphasis in original). According to Plaintiff, "Defendant Milyard failed in his responsibilities causing injury to Plaintiff by subjecting Plaintiff to the First and Eighth Amendment violations of the remaining Defendants . . . [and] chose not to properly train, instruct or reprimand [his employees for their] behavior."  *Id.*  Plaintiff also contends that Defendant Milyard was

personally aware of his injuries through communications from Plaintiff ("kite," e.g., letter or grievance) and phone calls from friends and family. *Id.* at 8-9. Plaintiff also contends that because it is the warden's responsibility to maintain a safe facility, Defendant Milyard is personally responsible for the failure to clear the snow off the sidewalk where Plaintiff slipped and fell and his failure to prevent Defendant Johnson's alleged retaliation. *Id.* at 7-8.

As was also true of the allegations contained in Plaintiff Amended Complaint, the Final Complaint similarly fails to sufficiently attribute personal liability to Defendant Milyard. To the extent Plaintiff has alleged a claim based on Defendant Milyard's role as warden of SCF, Defendant Milyard's supervisory role is insufficient to establish liability for the wrongs alleged by Plaintiff regarding his medical conditions and alleged mistreatment. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *see also Serna*, 455 F.3d at 1151 (holding that "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights'"). Accordingly, Plaintiff's attempt to state a claim against Defendant Milyard in relation to his alleged failure to ensure that his employees provided proper medical care is insufficient. In addition, Plaintiff's conclusory contention that Defendant Milyard is responsible for Defendant Johnson's alleged retaliation due to his a failure to prevent such conduct is likewise insufficient. *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1143-44 (D. Colo. 2010) (citing *Ashcroft*, 129 S. Ct. at 1950). Defendant Milyard "may not be held accountable for the misdeed of [his] agents." *Ashcroft*, 129 S. Ct. at 1949.

To the extent that the Final Complaint contends that Defendant Milyard should be

held responsible for the failures of his staff due to his knowledge of the treatment derived from communications with Plaintiff and his family, mere knowledge is not enough to hold a supervisor liable for the actions of his subordinates; "purpose rather than knowledge is required to impose [§ 1983] liability." *Id.* Moreover, sending "correspondence [to a prison official] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983." *Davis v. Ark. Valley Corr. Facility*, 99 Fed. Appx. 838, 843 (10th Cir. May 20, 2004). To hold a supervisory prison official liable on the basis of communications he received, "would be to hold any well informed [prison official] personally liable for damages flowing from any constitutional violation occurring at any jail within that [official's] jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for . . . a section 1983 action." *Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982); *see also Thomas v. Ortiz,* 07-cv-00400-WDM-MEH, 2007 WL 3256708, at *4 (D. Colo. Nov. 1, 2007) (unpublished decision) (holding that official deriving his knowledge of plaintiff's alleged injury from the grievance process is not personally liable unless he was directly involved in the alleged unlawful treatment); *Coates v. Sheahan*, No. 94-cv-6107, 1995 WL 430950, *2 (N.D. Ill. July 18, 1995) (unpublished decision) (holding that grievances submitted to a supervisory official are insufficient to establish the official's personal participation in a constitutional violation).

Finally, to the extent that Plaintiff contends that Defendant Milyard is personally responsible for his slip and fall on an icy SCF sidewalk, Plaintiff does not contend that Defendant Milyard had knowledge of the condition and deliberately failed to remedy it. Rather, he contends that Defendant Milyard has vicarious liability due to his role as the warden and control over individuals whose job it is to clear the sidewalks. Again, this

allegation is insufficient to establish that Defendant Milyard's own conduct led to Plaintiff's alleged injuries. Defendant Milyard "cannot be held liable unless [he] acted [to deprive Plaintiff of his constitutional rights]." *Ashcroft*, 129 S. Ct. at 1952. In addition, to the extent that Plaintiff contends that his injuries were caused by recklessness or negligence, his assertions do not form the basis for constitutional liability. *See Medina v. City & County of Denver*, 960 F.2d 1493, 1500 (10th Cir. 1992) ("[N]egligence and gross negligence do not give rise to section 1983 liability.").

Considering the above, I find that Plaintiff's Final Complaint "does not contain any factual allegation sufficient to plausibly suggest [that Defendant Milyard had the] . . . state of mind" necessary to constitute deliberate indifference to Plaintiff's alleged injuries. *See Ashcroft*, 129 S. Ct. at 1952. Accordingly, I recommend that Defendant's Milyard's Motion to Dismiss be granted and that Plaintiff's case against him be dismissed with prejudice. Because I find that Plaintiff has failed to state a claim against Defendant Milyard, it is unnecessary to consider whether he is entitled to qualified immunity. *See Dodge*, 695 F. Supp. 2d at 1144.

### III. Plaintiff's Motion for Injunctive Relief

#### A. Legal Standard

I note that although Plaintiff's Motion requests both a preliminary injunction and a temporary restraining order, because Defendants were given notice and an opportunity to respond, the Court analyzes the Motion under the standards for entering a preliminary injunction. Fed. R. Civ. P. 65(a) and (b) governs preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for

issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Comm'ns Corp. v. Media Strategies, Inc.*, No. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (unpublished decision) (citing 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2951 (2d ed.1995)).

Here, I find that Plaintiff is unable to meet his burden to show that a preliminary injunction is necessary. Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.*

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted). Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Schrier*, 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Plaintiff seeks a preliminary injunction which would (1) enjoin Defendants from retaliating against him for filing this lawsuit; (2) enjoin Defendants from transferring Plaintiff to certain units or bunk assignments; and (3) require Defendants to provide a physical examination by an outside specialist.[4] Given the relief that Plaintiff seeks, the relief sought would alter the status quo rather than preserve it and would also require Defendants to act. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier*, 427 F.3d at 1259, 1261. Therefore, "the right to relief must be clear and unequivocal." *Id.* at 1258.

Additionally, I must consider well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under exceptional

---

[4] As to the latter injunctive request, the Court makes two observations. First, to the extent that Plaintiff seeks an examination by an outside specialist for the purpose of obtaining expert testimony to assist him at trial, the request is improper in its present form. Injunctive relief is rare and only justified when necessary to remedy irreparable harm. The Court's injunctive power is not meant to be used as one party's tool for securing expert testimony free of charge. *See generally Walker v. Connor*, No. 10-cv-00721, 2010 WL 16886, at *1 (D. Colo. Apr. 23, 2010) (unpublished decision) (noting that injunctive motion seeking document production was actually a premature discovery request); *see also Harper v. Urbano*, No. 07-cv-00750, 2010 WL 1413107, at *1 (D. Colo. Apr. 1, 2010) (unpublished decision) (holding that inmate is not entitled to Court-appointed expert and noting that Fed. R. Evid. 706 does not apply to experts "intended to further partisan interests of any party"). Second, to the extent that Plaintiff offers to be bound by any opinion given by the outside specialist, see *Plaintiff's Motion* [#118] at 15, the request is more properly included in settlement negotiations. Plaintiff is free to offer this settlement proposal to Defendants, but it is not the proper basis for injunctive relief.

and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 269-70 & n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

## B.    Analysis

### 1.    Irreparable Injury

To obtain injunctive relief, Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied. *Schrier*, 427 F.3d at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (citation omitted). Therefore, to

demonstrate irreparable harm, Plaintiff "must establish both that harm will occur, and that, when it does, such harm will be irreparable." *Vega v. Wiley*, 259 Fed. Appx. 104, 106 (10th Cir. Dec. 17, 2007). Finally, an injunction is only appropriate "to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

Plaintiff fails to adequately show that he is facing immediate and irreparable harm from (1) his fear of retaliation; (2) his fear of a unit or bunk reassignment which may cause him injury; and (3) his lack of examination by an outside specialist. For example, Plaintiff seeks an outside medical examination to determine the merits of his case. He does not contend that without the examination he will suffer further harm or injury. Moreover, the Motion references only two instances of alleged retaliation which occurred after the scheduling conference, namely the transfer of Plaintiff to a new unit with a top bunk assignment and the mysterious cancellation of medical appointments scheduled for Plaintiff. *See Plaintiff's Motion* [#118] at 7, 11.

First, injunctive relief is generally not appropriate to address post-complaint conduct. *Teague v. Hood*, No. 06-cv-01800, 2008 WL 2228905, at *16 (D. Colo. May 27, 2008) (unpublished decision) (noting that injunctive relief should not lie to address conduct that occurred after complaint was filed). Second, Plaintiff later acknowledges that unit and bunk transfers are standard and happen "on a daily basis as a routine." *Plaintiff's Motion* [#118] at 13. Third, the fear that Plaintiff may be given an unwanted unit or bunk assignment is insufficient to establish that (1) Defendants are retaliating against him or (2) Plaintiff will

actually suffer irreparable harm from such an assignment.  The fact that Plaintiff has fallen from a top bunk in the past does not establish with any certainty that he is likely to do so again or that he will suffer irreparable harm if such a fall occurs.  Fourth, assuming Plaintiff intended to infer that Defendants cancelled his scheduled medical appointments in retaliation for prosecuting this lawsuit, such a conclusory allegation fails to rise to the level of conduct constituting irreparable harm.  For example, Plaintiff does not argue that the alleged cancellation of these appointments has led to or will lead to further significant injury.

To the extent that any harm from the lack of injunctive relief is alleged, Plaintiff's conjectural and unsubstantiated allegations fail to demonstrate harm that exceeds more than "merely serious or substantial" harm.  *See Connecticut*, 282 U.S. at 674 (noting that injunctive relief will not lie where alleged injury is merely feared to occur at some time in the future).  Given that I find no support for Plaintiff's conclusory allegations or – even if such contentions were true – that irreparable injury is imminent, injunctive relief is subject to denial on this basis alone.  *See Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (inferring that the failure to show irreparable injury is sufficient ground, by itself, to deny injunctive relief); *Dominion*, 356 F.3d at 1260 (noting that without irreparable harm, injunctive relief is not available).  In the interest of completeness, the Court also briefly addresses the remaining factors applicable to determine whether a preliminary injunction should enter.

### 2.    Balance of Harm and Public Harm

In order to be entitled to entry of a preliminary injunction, Plaintiff must also demonstrate that "the threatened injury . . . outweighs whatever damage the proposed

15

injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258. Plaintiff does not address the balance of harm in his Motion and appears to assume that the Court can control Defendants' conduct at minimal impact to Defendants. This assumption fails to take into account the important issue of the financial and logistical burdens imposed on Defendants if they were ordered to treat Plaintiff any differently. As noted above, the Court's interference with Defendants' day-to-day decisions regarding how to manage this Plaintiff, particularly to the extent that Plaintiff's requested relief would deviate from how Defendants manage all other inmates, would significantly undermine their discretion and autonomy. *See Taylor*, 34 F.3d at 269-70. While Plaintiff expresses the preference for better treatment, e.g., not to be moved to different units or to be assigned only to a bottom bunk, he fails to persuasively articulate how his preference could be effectively carried out and monitored with minimal impact on Defendants. Further, the Court notes that the Motion and documents attached to it demonstrate Defendants' and other SCF employees' responsiveness to Plaintiff's concerns (albeit in a way that Plaintiff feels is deficient), such that the extreme action of Court intervention would not appear to be warranted. Accordingly, the Court finds that Plaintiff has failed to make the requisite showing regarding this factor for entry of a preliminary injunction.

Next, I note that Plaintiff fails to address the impact of an injunction on the public in this instance. The Court notes that the public would ultimately have to bear the cost of any required conduct, e.g., the provision of a medical examination from an outside specialist. While in this isolated case, such cost may be minimal, the Court finds that the public

interest is best served by upholding the bright-line rule that Court interference is limited to only those extreme cases where irreparable injury is clear. The Court's monitoring of and control over Defendants' day-to-day treatment of Plaintiff and the management of the facility's medical services or inmate assignments would be adverse to the public interest, and the Court finds that Plaintiff has failed to meet his burden in relation to this factor. *See Teague*, 2008 WL 2228905, at *17 (noting that the public is adversely impacted by "the court monitor[ing] such matters as making copies, showering, verbal harassment, television, recreation, cleanliness of cells, assignment of cells," etc.).

### 3. Substantial Likelihood of Success on the Merits

Finally, Plaintiff must show that he has a substantial likelihood of success on the merits of his claims. *Schrier*, 427 F.3d at 1258. Plaintiff brings both First and Eighth Amendment claims regarding his treatment by Defendants. *Final Complaint* [#123] at 6-15; *Amended Complaint* [#16] at 6-24. In relation to the present Motion, Plaintiff fails to specifically address whether he would succeed on the merits of any of his underlying claims, except to note that he finds the treatment he has received from Defendants to constitute deliberate indifference and retaliation. *See Hall*, 935 F.2d at 1110 (holding that a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based"); *Bryant v. NFL, Inc.*, No. 07-cv-02186, 2007 WL 3054985, at *2 (D. Colo. Oct. 18, 2007) (unpublished decision) (holding that conclusory allegations will not support a motion for injunctive relief). First, Plaintiff has failed to sufficiently allege, at this stage, that he is likely to succeed on the merits of the claims asserted in his Final Complaint. Second, given the tenuous nature of the

17

relationship between some of Plaintiff's current allegations and the claims underlying his Final Complaint, even assuming the truth of the allegations Plaintiff makes here, these allegations do not tend to make his underlying claims any more or less meritorious. In addition, I note that in Plaintiff's underlying suit, he seeks only monetary damages, not injunctive relief. *See Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) (noting that plaintiff fails to show substantial likelihood of success where he cannot provide "clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief").

Because the purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm pending resolution of the lawsuit, "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (10th Cir. 1994) (citing *Penn*, 528 F.2d at 1185) (affirming district court's denial of plaintiff's motion for preliminary injunction where motion sought injunction related to alleged retaliatory actions and underlying case brought only Eighth Amendment claim for inadequate medical treatment). Several of Plaintiff's "new assertions might support additional claims against the same prison officials, [but] they cannot provide the basis for a preliminary injunction in this lawsuit." *Id.* (citing *Stewart v. United States INS*, 762 F.2d 193, 198-99 (2d Cir. 1985)).

Finally, considering whether Plaintiff is likely to succeed on the merits of the vague claim of retaliation asserted here, I note that "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation

jurisprudence does not change this role." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998). Further, an inmate is not "inoculated from the normal conditions of confinement experienced by [inmates] serving time in prison merely because he is engaged in protected activity." *Id.*; *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1224 (D. Colo. 2001) (requiring more than mere conclusory statement that inmate has been retaliated against). That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation."). Plaintiff has not done so here.

I find that Plaintiff has failed to show that he has a substantial likelihood of success on the merits of his underlying claims or the new claims asserted here. Accordingly, Plaintiff has failed to satisfy the four prerequisites to obtaining a preliminary injunction. In particular, Plaintiff has failed to carry his burden of establishing that the circumstances under which he is currently incarcerated give rise to a substantial risk of serious harm or place him in imminent danger. No hearing is required.[5]

---

[5] Rule 65(a) does not explicitly provide that an evidentiary hearing is required before ruling on a motion for a preliminary injunction. Injunctions may be denied without a hearing and based solely on the written evidence if "receiving further evidence would be manifestly pointless." 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2949, at 225-26 (2d ed. 1995); *see also Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (hearing unnecessary if movant cannot introduce sufficient evidence to justify granting the preliminary injunction). Specifically, the Court notes that the Tenth Circuit does not require the Court to hold an evidentiary hearing before denying a motion for a preliminary injunction. *See Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191 (table) (10th Cir. June 10, 1998). Nor is an evidentiary hearing indispensable in ruling on a motion for a preliminary injunction. *Aoude v. Mobil Oil*

## IV. Conclusion

For the reasons set forth above, I respectfully **RECOMMEND** that Plaintiff's Motion [#118] be **DENIED**.

I FURTHER **RECOMMEND** that Defendant Milyard's Motion to Dismiss [#129] be **GRANTED** and that the case against him be **dismissed with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. CDOC*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 15, 2010

BY THE COURT:

---

*Corp.*, 862 F.2d 890, 893 (1st Cir. 1988). Whether a hearing should be held is a matter of the Court's discretion. *Id.*; *see also Prosper, Inc. v. Innovative Software Techs.*, 188 Fed. Appx. 703, 705-06 (10th Cir. June 29, 2006) (holding that when allegations related to request for injunctive relief are not supported by the record, no hearing is required); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999) (noting that a formal hearing on consideration of injunctive relief is not required when parties are given opportunity to fully brief the issue).

s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix