IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-01041-CMA-KLM

EARL WILLIAM CAMPBELL, JR.,

      Plaintiff,

v.

DR. GAGEN SINGH, M.D.,
DR. PAULA FRANTZ, M.D.,
KATHERN RITTENHOUSE, P.A.C., and
SERGEANT JOHNSON, LU-3,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment** [Docket No. 145; Filed December 23, 2010] (the "Motion").  Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 198] in opposition to the Motion on July 15, 2011. Defendants filed a Reply [Docket No. 199] on July 28, 2011.  Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#145] be **GRANTED**.

## I.  Summary of the Case

At all times relevant to his claims, Plaintiff was an inmate at the Colorado Department of Corrections ("CDOC") Sterling Correctional Facility ("Sterling").  Plaintiff is now incarcerated at the CDOC Limon Correctional Facility.  *See Order* [Docket No. 195] at 1 n.1.  At all times relevant to Plaintiff's claims, Defendants Singh, Frantz, and Rittenhouse were medical care providers under contract with CDOC to provide medical care to Sterling inmates. *Final Complaint* [Docket No. 123] at 2-3.  Defendant Johnson was a "Housing Sergeant" at Sterling.  *Id.* at 4 (alleging that, as a Housing Sergeant, Defendant Johnson had a "duty and responsibility to provide Plaintiff with proper, safe living assignments [and] housing conditions").

On August 31, 2010, Plaintiff filed a Final Complaint [#123] in which he claims that Defendants violated the rights guaranteed to him by the Eighth Amendment to the United States Constitution by "knowingly and intentionally demonstrating extreme indifference to [his] serious medical needs," i.e., his needs for (1) surgery to repair a left knee anterior cruciate ligament (ACL) tear, and   (2) appropriate post-surgery treatment and accommodations.[1]  *Id.* at 10.  When Plaintiff arrived at Sterling in 2001, he was diagnosed with an ACL tear.  *Amended Complaint* [#16] at 6.  To repair the tear, Plaintiff underwent two knee surgeries in September 2002 and on October 29, 2003.  *Recommendation of United States Magistrate Judge* [Docket No. 170] at 2; *Amended Complaint* [#16] at 6-15.  Two days after the second surgery, on October 31, 2003, Plaintiff slipped on an icy

---

[1] Plaintiff previously filed an Amended Complaint [Docket No. 16] on August 28, 2009. All of the allegations contained therein are incorporated by reference into the Final Complaint [#123].

sidewalk at Sterling and tore open the surgical incision on his left knee. *Amended Complaint* [#16] at 13, ¶¶ 30-31 ("As Plaintiff fell, he felt his left knee flex [past] 90 degrees and literally tear open."); *id.* at 13-14, ¶ 36 (describing the injury as "a huge, jagged, gaping wound torn through the incision line on Plaintiff's left knee"). Plaintiff was taken to the Sterling Regional Medical Center where he received emergency surgery to close the wound. *Id.* at 14-15. Plaintiff claims that Defendants violated the Eighth Amendment by (1) denying him appropriate follow-up medical treatment and accommodations, e.g., a cane, orthoses, supportive wraps, pain medication, and appropriate living arrangements, after his three surgeries, and (2) refusing to recommend a fourth surgery to alleviate his knee pain.

Defendants contend that undisputed facts demonstrate that they were not deliberately indifferent to Plaintiff's need for appropriate follow-up medical treatment and accommodations. They also contend that they exercised appropriate medical judgment in declining to recommend a fourth knee surgery. Defendants have provided affidavits [Docket No. 145-1] as evidence that their conduct did not violate the Eighth Amendment. They assert that the affidavits are sufficient to establish that they are entitled to summary judgment in their favor.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d

ed.1998).

When considering Plaintiff's Final Complaint [#123] and Response [#198], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *id.* at 104 (quoting *Gregg*, 428 U.S. at 173). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety," *Id.* at 837. "A medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.C.N.H. 1977)).  A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," **and he actually drew that inference**.  *Farmer*, 511 U.S. at 837.

Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *see also Ramos,* 639 F.2d at 575 ("[A] mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.").  Further, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").  Finally, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).  "[A] prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,'

such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview," *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 107).

### A.   Defendant Singh

Plaintiff's Amended Complaint [#16] mentions Defendant Singh just three times. First, Plaintiff alleges that when he first arrived at Sterling in 2001, Singh informed him that surgery was available to repair his torn ACL.  *Amended Complaint* [#16] at 6, ¶ 2.  Second, Plaintiff alleges that he "filed numerous 'sick-call' requests" to see Singh sometime after his first knee surgery in September 2002.  *Id.* at 7, ¶ 7.  Third, Plaintiff alleges that Singh, along with other Defendants, refused to "authorize or provide any additional consultation or treatment associated with [his] left knee surgery" after August 27, 2004.  *Id.* at 21, ¶ 91. In his Final Complaint, Plaintiff supplements his allegations against Singh with two pages of conclusory, broad, and general statements of purported wrongdoing.  *See, e.g.*, *Final Complaint* [#123] at 10, ¶ 15 (alleging that Singh "failed to consult with [the doctor who performed Plaintiff's knee surgeries] or to employ or utilize any available diagnostic procedures to determine" whether the surgeries were successful); *id.* at 10, ¶ 14 (alleging that Singh "ignored Plaintiff's pleas and requests for medical attention" without stating exactly when and how such requests were made); *id.* at 10, ¶ 13 (repeating the conclusory allegation that Singh "intentionally and negligently failed to provide Plaintiff with proper and necessary medical care and treatment as would any competent physician outside the prison environment").

Singh contends that undisputed facts demonstrate that he never knew of and disregarded an excessive risk to Plaintiff's health and safety.  *Motion* [#145] at 11-12.  In

support of this contention, he has submitted an affidavit in which he states that he never refused to provide Plaintiff with medical treatment or pain medication, *Affidavit of Gagandeep Singh* [#145-1] at 3, ¶¶ 23-24, and that he was not involved in ordering or performing Plaintiff's knee surgeries, *id.* at 2.  Singh states that he saw Plaintiff for follow-up consultations after the knee surgeries on February 10, 2005 and April 28, 2005.  *Id.* at 3, ¶¶ 19-20.  He states that Plaintiff "did not have a gait imbalance," and that he discussed with Plaintiff "the non-necessity of [a further] orthopaedic consult and MRI."  *Id.*  Singh did not provide any other follow-up treatment or consultations regarding Plaintiff's knee after his surgeries.  *See id.*  However, Singh did treat Plaintiff "between December 31, 2007 and January 4, 2008, when [Plaintiff] was admitted to the infirmary while on a hunger strike." *Id.* at 1, ¶ 6.  Singh states that his "role was limited to treating the physical effects of [Plaintiff]'s hunger strike" during this time.  *Id.*  With respect to the medical treatment that Plaintiff received at all times relevant to his claims, Singh states as follows:

> [Plaintiff] was seen and managed appropriately for his left knee problem and other medical issues. [He] was seen by providers, physicians, nurses, and consultants during his stays at [Sterling] and [the Denver Reception and Diagnostic Center] infirmary. [He] has received wound care, analgesics, follow-up visits, and surgeries. [He] received standard [ ] care for his clinical diagnosis.

*Id.* at 3, ¶ 25.

Based on the competent evidence provided by the parties, there is no genuine issue of material fact regarding whether Singh ignored Plaintiff's medical needs at any point. Instead, Singh's affidavit establishes that he provided Plaintiff with treatment that he believed to be appropriate.  Comparing Plaintiff's allegations with Singh's affidavit, the Court finds that Plaintiff had a "mere difference of opinion" as to how he should be

diagnosed and treated. *Ramos*, 639 F.2d at 575. This does not establish a claim of cruel and unusual punishment. *Id.* At the very least, Singh's affidavit [#145-1] is sufficient to carry Defendants' initial burden of making a prima facie showing of a lack of evidence that Singh knew of and disregarded an excessive risk to Plaintiff's health or safety. *See Adler*, 144 F.3d at 671. In this construct, the burden therefore shifts to Plaintiff to put forth sufficient evidence to overcome Singh's affidavit. *See Anderson*, 277 U.S. at 248.

The Court finds that Plaintiff has not carried this burden. Although he clearly understands the importance of signing under penalty of perjury any documents which include statements that he wishes to be considered as evidence, Plaintiff failed to so sign his Response. *See Response* [#198] at 5 & 9 (stating that Plaintiff has previously "tendered a sworn statement under penalty of perjury" and "signed an averment under penalty of perjury" so that the Court would consider the statement and averment as evidence). Accordingly, the Court may not treat the Response as an affidavit, and its content is not competent summary judgment evidence. *See Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)).

Although his Response itself is not competent evidence, Plaintiff has provided thirty pages of accompanying documents [Docket No. 198-1]. These documents are copies of inmate grievance forms and various medical records. The documents are not organized in a meaningful way, and Plaintiff has failed to put them in context or explain their content in his Response. *See, e.g.*, *Response* [#198] at 9 (stating that Defendants' assertion "that [Plaintiff] benefitted from physical therapy is an out and out lie," and supporting this statement only by directing the Court to conduct its own review of Plaintiff's medical records). Because Plaintiff fails to specifically direct the Court's attention to relevant factual

information in this material, he cannot rely on it as evidence that supports his allegations. The Court "has neither the duty nor the inclination to scan the entire record in search of support for Plaintiff's . . . claim." *Klen v. Colo. State Bd. Of Agric.*, No. 05-cv-02452-EWN-CBS, 2007 WL 2022061, at *23 (D. Colo. July 9, 2007) (unreported decision); *see also Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992) ("[The Court] will not search the record in an effort to determine whether there exists . . . evidence which might require submission of the case to a jury."); *see generally United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). To overcome Singh's affidavit, Plaintiff must point to specific evidence that Singh knew of and disregarded an excessive risk to his health or safety. Plaintiff simply has not done this. Instead, Plaintiff has provided evidence of the course of his medical treatment and argued in a conclusory fashion that this course was inappropriate. A prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan*, 471 F.3d at 1160. Further, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The Court concludes that Plaintiff's evidence in no way suggests that Singh consciously disregarded Plaintiff's medical needs in violation of the Eighth Amendment. "As Plaintiff has provided no evidence beyond his Response and accompanying document dump, there is nothing to refute [Singh's] affidavit" stating that Plaintiff received standard and appropriate medical care at all times. *Radick v. Ippolito*, No. 10-cv-02504-DME-KLM, Docket No. 94 at 11 (D. Colo. Jun. 28, 2011) (unpublished decision) (Recommendation of United States Magistrate Judge). Accordingly, the Court recommends that summary

judgment be entered in favor of Singh and against Plaintiff.

### B.    Defendant Frantz

Plaintiff mentions Defendant Frantz just once in his Amended Complaint:

> In February of 2007, Plaintiff was seen by Dr. Paula Frantz, who informed [him] that Sterling, CDOC, and medical services had absolutely no intention of providing any additional treatment or surgery for [his] knee. [Frantz told Plaintiff that he] was nearly 60 years old, doing life, and would in all likelihood die in prison[.] [She also told him that he] was never going to be a track star[,] that [he] was an extremely poor investment[,] and that [he] was simply going to have to live within [his] physical limitations. [Frantz told him that he] would be issued a cane and given 2000 mgs of Tylenol per day and that was the end of [his] treatment.

*Amended Complaint* [#16] at 23, ¶ 104.  Plaintiff states no further allegations against Frantz in his Final Complaint.  *See Final Complaint* [#123] at 12 (stating that "no amendments are offered for [Defendant Frantz]").

Frantz contends that undisputed facts demonstrate that she never knew of and disregarded an excessive risk to Plaintiff's health and safety.  *Motion* [#145] at 16-17.  In support of this contention, she has submitted an affidavit in which she states that she saw Plaintiff at Sterling on February 1, 2007 to address his complaints of "chronic left knee pain."  *Affidavit of Paula Frantz* [#145-1] at 14-15, ¶ 4-5.  She states that she reviewed Plaintiff's medical records, determined that a fourth left knee surgery would not help his pain, prescribed him Tylenol, and discussed the importance of maintaining physical activity.  *Id.* at 15.

Based on the competent evidence submitted by the parties, the Court finds that there is no genuine issue of material fact regarding whether Frantz consciously disregarded Plaintiff's medical needs at any point.  Instead, Frantz's affidavit establishes that she provided Plaintiff with treatment that she believed to be appropriate.  Comparing Plaintiff's

allegations with Frantz's affidavit, the Court finds that Plaintiff had a "mere difference of opinion" as to how he should be diagnosed and treated.   *Ramos*, 639 F.2d at 575. Essentially, Plaintiff complains that Frantz determined that recommending a fourth knee surgery was not warranted when he believed that such surgery was necessary.  This does not establish a claim of cruel and unusual punishment.  *Id.; Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Dulany*, 132 F.3d at 1240 ("[A] prison doctor remains free to exercise his or her independent professional judgment."); *Snipes*, 95 F.3d at 591 ("Medical decisions that may be characterized as classic examples of matters for medical judgment, such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." (quotation omitted)).  At the very least, Frantz's affidavit [#145-1] is sufficient to carry Defendants' initial burden of making a prima facie showing of a lack of evidence that Frantz knew of and disregarded an excessive risk to Plaintiff's health or safety.  *See Adler*, 144 F.3d at 671.   In this construct, the burden therefore shifts to Plaintiff to put forth sufficient evidence to overcome Frantz's affidavit.  *See Anderson*, 277 U.S. at 248.

The court finds that Plaintiff has not carried this burden.  As discussed above in Part III.A., Plaintiff's Response is not competent summary judgment evidence, and the accompanying documents are evidence only of Plaintiff's course of treatment with which he is dissatisfied.  This evidence in no way suggests that Frantz consciously disregarded Plaintiff's medical needs in violation of the Eighth Amendment.  The Court agrees with Defendants that (1) "the evidence does not support Plaintiff's claim that his knee would benefit from another surgery or additional treatment beyond what was prescribed," and (2)

-12-

"the evidence does not support a finding of deliberate indifference." *Motion* [#145] at 15.

Accordingly, the Court recommends that summary judgment be entered in favor of Frantz

and against Plaintiff.

### C.    Defendant Rittenhouse

Plaintiff has only one claim remaining against Defendant Rittenhouse. *See*

*Recommendation of United States Magistrate Judge* [Docket No. 79] at 27 (recommending

that "an Eighth Amendment claim based on denial of pain medication remain pending

against Defendant Rittenhouse and all other claims against her be dismissed"); *Order*

[Docket No. 108] at 19-20 (adopting the Recommendation).  This claim is supported by just

one allegation in the Amended Complaint:

> Plaintiff began to realize that the knee injury was not stabilizing properly and
> was remaining extremely painful.  All pain medication had been discontinued
> months earlier.  Plaintiff was informed by Dr. Singh and P.A. Rittenhouse that
> [he] could purchase Tylenol from the canteen, but [he] had no funds to do so.

*Amended Complaint* [#16] at 20, ¶ 87.  Plaintiff states no further allegations against

Rittenhouse in his Final Complaint.  *See Final Complaint* [#123] at 12 (stating that "no

amendments are offered for [Defendant Rittenhouse]").

Rittenhouse contends that undisputed facts demonstrate that she never knew of and

disregarded an excessive risk to Plaintiff's health and safety.  *Motion* [#145] at 16-17.  In

support of this contention, she has submitted an affidavit in which she states that in her role

as a nurse practitioner at Sterling she "supported [Plaintiff]'s treatment for knee pain by

prescribing him the following alternative modalities for pain relief: sports cords, ace wraps,

MRI, orthopedic consults, don joy knee brace and a cane."  *Affidavit of Kathy Rittenhouse*

[#145-1] at 10-11.  She states that "during the time frame that [she] was at [Sterling], CDOC

did not prescribe acetaminophen (Tylenol)" to prisoners who did not have a "special Non-Formulary request." *Id.* at 11. But she also states that "[Plaintiff] received acetaminophen from February 2007 to August 2007, per a Non-Formulary request." *Id.*

Based on the competent evidence provided by the parties, the Court finds that there is no genuine issue of material fact regarding whether Rittenhouse consciously disregarded Plaintiff's medical needs. Instead, Rittenhouse's affidavit establishes that she provided Plaintiff with treatment that she believed to be appropriate within the bounds of CDOC policies. Comparing Plaintiff's allegations with Rittenhouse's affidavit, the Court finds that Plaintiff had a "mere difference of opinion" as to the medication necessary to treat his knee pain. *Ramos*, 639 F.2d at 575. This does not establish a claim of cruel and unusual punishment. *Id.*; *see also Estelle*, 429 U.S. at 106; *Dulany*, 132 F.3d at 1240; *Snipes*, 95 F.3d at 591. At the very least, Rittenhouse's affidavit [#145-1] is sufficient to carry Defendants' initial burden of making a prima facie showing of a lack of evidence that Rittenhouse knew of and disregarded an excessive risk to Plaintiff's health or safety. *See Adler*, 144 F.3d at 671. In this construct, the burden therefore shifts to Plaintiff to put forth sufficient evidence to overcome the affidavit. *See Anderson*, 277 U.S. at 248.

The court finds that Plaintiff has not carried this burden. As discussed above in Part III.A., Plaintiff's Response is not competent summary judgment evidence, and the accompanying documents are evidence only of Plaintiff's course of treatment with which he is dissatisfied. This evidence in no way suggests that Rittenhouse consciously disregarded Plaintiff's medical needs in violation of the Eighth Amendment. The Court agrees with Defendants that "Rittenhouse's action in . . . prescribing [Plaintiff] alternative modalities for pain demonstrates that she acted in good faith and was not deliberately

indifferent." *Motion* [#145] at 18.   Accordingly, the Court recommends that summary judgment be entered in favor of Rittenhouse and against Plaintiff.

### D.   Defendant Johnson

Plaintiff alleges that on November 23, 2005, Defendant Johnson changed his (Plaintiff's) bunk assignment so that he was required to sleep in a top bunk in Living Unit 4 at Sterling. *Amended Complaint* [#16] at 22, ¶ 95.  Plaintiff alleges that he fell from the top bunk and sustained "a severe head injury." *Id.*  Plaintiff claims that Johnson violated the Eighth Amendment by forcing him to move to a top bunk when Johnson knew that his left knee problems would make a top bunk dangerous. *Id.* at ¶ 98.  Plaintiff states no further allegations against Johnson in the Final Complaint. *See Final Complaint* [#123] at 15 (stating that "no amendments are offered for [Defendant Johnson]").

Johnson contends that undisputed facts demonstrate that he never knew of and disregarded an excessive risk to Plaintiff's health and safety. *Motion* [#145] at 21.  In support of this contention, he has submitted an affidavit in which he explains that he was not aware that requiring Plaintiff to sleep in a top bunk would pose an excessive risk.  He states as follows: "Prior to moving [Plaintiff] to a top bunk, I checked his medical restrictions and called [Sterling] medical [staff] to insure that [Plaintiff] could be moved. [Plaintiff] did not have any restrictions listed on the [CDOC] Information System.  Because there were not any restrictions, [Plaintiff] was permitted to live . . . in the top bunk. " *Affidavit of Leon Johnson* [#145-1] at 5-6.

Based on the competent evidence provided by the parties, the Court finds that there is no genuine issue of material fact regarding whether Johnson knew that placing Plaintiff in a top bunk posed an *excessive* risk to Plaintiff's health or safety.  Without knowledge of

the existence of an excessive risk, Johnson could not have violated the Eighth Amendment. *See Farmer*, 511 U.S. at 837 (explaining that a defendant knows of and disregards an excessive risk to a prisoner's health or safety only when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," **and he actually draws that inference**).  At the very least, the affidavit [#145-1] is sufficient to carry Defendants' initial burden of making a prima facie showing of a lack of evidence that Johnson knew of and disregarded an excessive risk to Plaintiff's health or safety.  *See Adler*, 144 F.3d at 671.  In this construct, the burden therefore shifts to Plaintiff to put forth sufficient evidence to overcome the affidavit.  *See Anderson*, 277 U.S. at 248.

The court finds that Plaintiff has not carried this burden.  As discussed above in Part III.A., Plaintiff's Response is not competent summary judgment evidence.  Moreover, nothing contained in the thirty pages of documents accompanying Plaintiff's Response suggests that Johnson was aware that placing Plaintiff in a top bunk posed an *excessive* risk.  Accordingly, the Court recommends that summary judgment be entered in favor of Johnson and against Plaintiff.

## IV.  Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that the **Motion  for Summary Judgment** [#145] be **GRANTED**.  Accordingly,

I FURTHER **RECOMMEND** that summary judgment be entered in favor of Defendants and against Plaintiff as to all claims in this case.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 8, 2011

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge